[No. 33270.   Department One.   October 6, 1955.]

OBERT SKODJE *et al., Appellants,* v. FREDERICK A. HARDY
*et al., Respondents.*[1]

[1]Reported in 288 P. (2d) 471.

558

*Litchman & Litchman,* for appellants.

*Eggerman, Rosling & Williams* and *Henry E. Kastner,* for respondents.

HAMLEY, C. J.—This malpractice case was tried to a jury and dismissed at the close of plaintiffs' case. The sole question presented on appeal is whether plaintiffs produced substantial evidence of actionable negligence.

Obert Skodje, suffering from abdominal pains, went to Dr. Hardy on July 1, 1953, for diagnosis and treatment. He told Dr. Hardy that he believed he had appendicitis. The doctor spent twenty or twenty-five minutes examining the patient, including palpation of the abdomen. A urine specimen was taken, but Dr. Hardy did not take the patient's pulse, temperature, blood count, or blood pressure. There was no X-ray or rectal examination.

Dr. Hardy diagnosed the case as bacteria colitis, or bowel infection. He gave Skodje a prescription for pills, and advised rest. Skodje followed these directions, but his condition grew worse. The next morning, Mrs. Skodje telephoned Dr. Hardy and told of her husband's increased pain, and that he was "cold and clammy and yellow." Dr. Hardy then prescribed an enema of soap and water, and asked that a heat pad be applied to the abdomen. He told Mrs. Skodje to call him back at six o'clock p. m.

The doctor's directions were followed, but Skodje continued to grow worse. His pain increased, and his stomach became bloated. Mrs. Skodje reported this information to

Dr. Hardy at the appointed time, and insisted that "something had to be done." Mrs. Skodje testified that Dr. Hardy then stated that he was not sure what the difficulty was, but that he was going on his vacation in the morning and did not want to get too involved. He suggested that Mrs. Skodje call another doctor who, unlike Dr. Hardy, performs abdominal surgery.

Mrs. Skodje then telephoned Dr. Vernal C. Norine, and described her husband's symptoms. Dr. Norine ordered immediate hospitalization for purposes of examination. A complete urinalysis and a blood count were ordered, and X rays were taken. The patient's temperature, pulse, and blood pressure were also taken. Dr. Norine made a physical examination and diagnosed the case as acute appendicitis with possible abscesses.

An appendectomy was done on Skodje late that night, and a perforated appendix was removed. Skodje was discharged from the hospital ten days later, after what the doctor called a "stormy" convalescence. There was convalescence at home for a further period of six weeks. Skodje was directed not to do any heavy lifting for a period of six months.

A physician or surgeon is negligent only if he fails to exercise that degree of care, diligence, and skill which is ordinarily possessed and exercised by members of the medical profession in the same or a similar locality. Except under certain circumstances (not here present), the evidence tending to establish such negligence must be based upon medical testimony. *Woods v. Pommerening,* 44 Wn. (2d) 867, 271 P. (2d) 705.

Negligence was charged in four particulars, the first being that Dr. Hardy made a wrong diagnosis.

The appendectomy showed that Dr. Hardy made a wrong diagnosis. But a wrong diagnosis is not actionable, unless (1) it was the result of negligence, and (2) it was followed by improper treatment, to the injury of the patient. *Peddicord v. Lieser,* 5 Wn. (2d) 190, 105 P. (2d) 5. These matters are dealt with below, in connection with the discussion of other allegations of negligence.

The second specification of negligence is that Dr. Hardy's diagnosis was incompetently and carelessly performed.

In pressing this point, appellants call attention to the fact that Dr. Hardy's principal practice consisted of the examination of applicants for policies of insurance. While he performed some surgery, he had no experience in abdominal surgery. Appellants contend that these facts presented a jury question as to whether Dr. Hardy lacked the requisite knowledge and skill to diagnose Skodje's condition.

■ We do not agree. There was no medical testimony to the effect that Dr. Hardy, who was a licensed physician and surgeon, lacked the requisite knowledge and skill. It is common knowledge that many diagnosticians perform no surgery.

Appellants further contend that the testimony to the effect that Dr. Hardy did not take Skodje's temperature, blood pressure, blood count, or pulse, and conducted no X-ray or rectal examination, presented a jury question as to whether the diagnosis was carelessly performed.

Dr. Norine testified that he takes these steps in making a diagnosis of this kind. Neither he nor any other medical expert, however, testified that the methods followed by Dr. Hardy were inadequate, or that they were not in accordance with the practice followed by the medical community.

There was no medical testimony as to the necessity or value of taking a blood count, blood pressure, pulse, or temperature. The undisputed testimony is that Skodje's temperature, pulse, and blood pressure were normal when he was examined by Dr. Norine. While Skodje's blood count was high when he was examined by Dr. Norine, the medical testimony was to the effect that this would be indicative of colitis as well as appendicitis.

■ The testimony of other physicians that they would have followed a different course of treatment, or a disagreement between doctors as to what the treatment should have been, does not establish negligence. *Fritz v. Horsfall*, 24 Wn. (2d) 14, 163 P. (2d) 148. In our opinion, the same holds true with regard to diagnostic methods.

■ Appellants refer to some medical texts which recommend a more thorough examination than Dr. Hardy made, while respondents counter with other medical texts which tend to the contrary. These text materials are not a substitute for medical testimony, nor do they provide information as to the medical practice in the locality in question.

■ From what has been said, it follows that there was here a lack of medical testimony to present a jury question as to negligence based upon the manner in which Dr. Hardy made his diagnosis.

A final contention as to negligence in performing the diagnosis is based on the fact that Dr. Norine correctly diagnosed the case on the following day. Dr. Norine testified, however, that this was a so-called "silent" appendix, with the abscess behind, which is one of the "bug-abears" of all doctors—being very difficult to diagnose. Dr. Norine further testified that the lapse of a day and the giving of the enema could have made his diagnosis easier. He also had the advantage of knowing that Dr. Hardy's diagnosis and prescribed treatment had not produced favorable results.

There was no medical testimony that Dr. Hardy's failure to correctly diagnose the case was due to the fact that he failed to use care, skill, and diligence ordinarily possessed and exercised by members of the medical community.

We conclude that there was insufficient evidence to submit to the jury on the question of whether Dr. Hardy's diagnosis was incompetently and carelessly performed.

The third specification of negligence is that Dr. Hardy was careless in prescribing treatment, and in failing to advise an operation.

The failure to advise an operation was consistent with Dr. Hardy's diagnosis of bowel infection rather than appendicitis. Dr. Norine testified that it is a common practice for doctors in Seattle to prescribe, over the telephone, the giving of an enema. There is no evidence that Mrs. Skodje failed to follow the directions of Dr. Hardy, or gave him an incorrect description of her husband's symptoms. Hence,

there was no showing of negligence in the fact that Dr. Hardy relied upon Mrs. Skodje in these particulars.

Neither Dr. Norine nor any other medical expert testified that the prescribed pills, enema, heat pad, or thirty-six-hour delay contributed to the rupture of the appendix, or in any other way proved detrimental.

In our opinion, there was no substantial medical testimony supporting this third allegation of negligence.

Finally, appellants argue that the case should have gone to the jury, because Dr. Hardy "abandoned" Skodje while the latter was in danger and in great pain.

The asserted abandonment of his patient by Dr. Hardy is not actionable, because it led to no delay or other detrimental result. Mrs. Skodje immediately telephoned another doctor, and her husband was hospitalized, examined, and operated upon later that night. Dr. Norine testified that Skodje was operated upon as soon as he should have been.

Affirmed.

SCHWELLENBACH, DONWORTH, OTT, and FINLEY, JJ., concur.

---

November 1, 1955. Petition for rehearing denied.