**Dr. Bill LEE, Appellant,**

v.

**James DEWBRE et al., Appellees.**

**No. 7191.**

Court of Civil Appeals of Texas.
Amarillo.
Nov. 26, 1962.

Evans, Pharr, Trout & Jones, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Huff & Bowers, Lubbock, for appellees.

DENTON, Chief Justice.

This is an appeal from an order overruling appellant's plea of privilege in a malpractice suit brought by appellees, James Dewbre and wife, against appellant, Dr. Bill Lee, and Dr. J. Walker Davis. Appellees seek to recover for injuries alleged to have been sustained by Mrs. Dewbre resulting from the birth of a child. At the time this occurred, both doctors resided in Cochran County, Texas, but, at the time the suit was filed, Dr. Lee was a resident of Castro County and Dr. Davis was a resident of Lubbock County. Both doctors timely filed their pleas of privilege to remove the case from Cochran County, and asked that the suit be transferred to the counties of their respective residences. Controverting affidavits sought to maintain venue in Cochran County under Subdivisions 9 and 9(a) of Article 1995, Vernon's Ann.Tex.Civ.St., the subdivisions relating to alleged acts of negligence. The trial court sustained Dr. Davis' plea of privilege and overruled the plea of privilege of Dr. Lee. No appeal from the order sustaining Dr. Davis' plea of privilege has been perfected.

Plaintiffs below alleged two acts of negligence on the part of Dr. Lee, to-wit: In attempting to deliver Mrs. Dewbre's baby prematurely; and in abandoning the patient in the hospital at a time when in the exercise of that standard of care of doctors in and around Cochran County, he knew, or should have known, the patient was critically ill by virtue of profuse internal bleeding without making any arrangements for medical care. It was further alleged these acts of negligence were the proximate cause of Mrs. Dewbre's injuries.

After being a patient of Dr. Lee during six or seven months of pregnancy, Mrs. Dewbre was admitted to the hospital in Morton on Friday, July 8, 1960, at 9:00 o'clock p. m. She testified she had a pain in her side but Dr. Lee's examination revealed to his satisfaction that she was due to deliver her child in a relatively short time. Drugs were administered but her condition had not progressed by midnight and Dr. Lee left the hospital. An examination the next morning indicated to Dr. Lee the baby would be born soon. The baby was born at 1:50 o'clock p. m. Saturday, July 9. Immediately thereafter extensive internal bleeding became evident and Mrs. Dewbre went into shock. Numerous blood transfusions were given to her in addition to other medications, and efforts to stop the bleeding were begun. Some two hours after the child was born, Dr. Davis was called to assist Dr. Lee. Both doctors proceeded to repair a laceration of the womb and vaginal packs were applied. Hospital records reveal Mrs. Dewbre's pulse and blood pressure went to zero during this period but became stronger after four or five hours, and that her bleeding was reduced during the night. The baby, after being born in apparent good health, died at 11:00 o'clock p. m., some nine hours after its birth. The record does not disclose the cause of the child's death. Dr. Lee remained with the patient until sometime after midnight of that date and returned to the hospital the next morning. Dr. Lee did not treat Mrs. Dewbre after this Sunday morning visit, but left town and did not see her again until after this suit was filed. Although there is some conflict in the evidence, it is evident she was visited and treated by Dr. Davis after the absence of Dr. Lee until about noon, Tuesday, July 12. At that time, Mrs. Dewbre was transferred to the hospital in Levelland, Texas. She was then treated by Dr. Harrison of that city. Some twelve hours after she was admitted to the Levelland hospital, Drs. Harrison and Selby performed a hysterectomy. She was released from that hospital some ten days later.

Appellant's points of error raise the questions both of no evidence and insufficient evidence to support the alleged acts of negligence of Dr. Lee. We will first consider the law question of no evidence concerning the alleged negligent acts of Dr. Lee in attempting to deliver the baby prematurely. In dealing with this phase of the malpractice case, it is well settled that this

act of negligence and its proximate cause must be proved by medical evidence by a doctor of the same school of practice as the defendant. Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1. The record contains testimony by Dr. Harrison in addition to testimony by Drs. Lee and Davis. Detailed hospital and nurses records were also introduced to show the treatment and medications administered to Mrs. Dewbre. Although a great deal of difficulty was incurred in the delivery of Mrs. Dewbre's child, there was no medical evidence presented to the effect that Dr. Lee was negligent in the method or manner in which he treated the patient. It is not necessary to outline the evidence in this regard, but it is sufficient to say that all doctors who testified stated that the treatment given by Dr. Lee was in accordance with good medical practices and that usual procedures were performed. In view of our holding there is no evidence to support this alleged act of negligence, it is unnecessary to pass on the fact question of insufficient evidence.

The remaining points of error deal with the alleged act of abandonment of Mrs. Dewbre by Dr. Lee. It is undisputed that Dr. Lee attended Mrs. Dewbre at frequent intervals and for rather lengthy periods of time from the time she was admitted to the hospital until approximately 11:00 o'clock a. m. on Sunday, July 10. It is also undisputed that Dr. Lee left Morton that Sunday afternoon and did not treat her thereafter. The evidence is disputed as to when and if Dr. Lee did in fact notify the Dewbres he was leaving town. There is also some dispute concerning the treatment and attention given the patient by Dr. Davis after Dr. Lee left although the hospital records bear out Dr. Davis' testimony that he did visit and prescribe certain treatments for Mrs. Dewbre. Although the two doctors were not partners as such, they occupied the same clinic and assisted each other in the treatment of their respective patients from time to time. The testimony is rather vague, but the record reflects Dr. Davis knew Dr. Lee was leaving town, but Dr. Davis testified

he accepted the responsibility of caring for Mrs. Dewbre during Dr. Lee's absence. There is also evidence to the effect Dr. Davis himself was to leave town temporarily within a few days, but whether Dr. Lee knew of this is not altogether clear. Dr. Lee did not practice medicine in Morton after Sunday, July 10, although he testified he intended to return to Morton and continue his practice at the time he left. Why his plans were changed is not known. Dr. Davis discontinued his practice and left Morton on approximately October 1 of that same year. As stated above, Mrs. Dewbre was transferred by ambulance to the hospital in Levelland, a distance of some twenty-five miles, on July 12. Dr. Davis sent along a written report briefly describing Mrs. Dewbre's condition and stating the treatment given by Drs. Davis and Lee. Within twelve hours after her admission in the Levelland hospital, Drs. Harrison and Selby performed what was intended to be an exploratory operation and then proceeded to perform a hysterectomy upon Mrs. Dewbre.

Alleged abandonment of a patient by a doctor is one type of wrong which may give rise to a claim for malpractice. Abandonment, when used in cases dealing with the physician-patient relationship, generally means the unilateral severance of the professional relationship between himself and the patient without reasonable notice at a time when there is still the necessity of continuing medical attention. See 57 A.L.R. 2d 435, Section 1(d). This is a case of first impression. No Texas case in point has been cited and we have found none. We must, therefore, examine cases from other jurisdictions. In Ricks v. Budge, 91 Utah 307, 64. P.2d 208, the Supreme Court of Utah announced the applicable rule of law as follows:

"We believe the law is well settled that a physician or surgeon, upon undertaking an operation or other case, is under the duty, in the absence of an agreement limiting the service, of continuing his attention, after the first operation

or first treatment, so long as the case requires attention. The obligation of continuing attention can be terminated only by the cessation of the necessity which gave rise to the relationship, or by the discharge of the physician by the patient, or by the withdrawal from the case by the physician after giving the patient reasonable notice so as to enable the patient to secure other medical attention. A physician has the right to withdraw from a case, but if the case is such as to still require further medical or surgical attention, he must, before withdrawing from the case, give the patient sufficient notice so the patient can procure other medical attention if he desires."

The Supreme Court of California stated the rule in Lathrope v. Flood, 6 Cal.Unrep. Cas. 637, 63 P. 1007, reversed on other grounds, 135 Cal. 458, 67 P. 683, 57 L.R.A. 215, in the following language:

"It is the undoubted law that a physician may elect whether or not he will give his services to a case, but, having accepted his employment, and entered upon the discharge of his duties, he is bound to devote to the patient his best skill and attention, and to abandon the case only under one of two conditions: First, where the contract is terminated by the employer, which termination may be made immediate; second, where it is terminated by the physician, which can only be done after due notice, and an ample opportunity afforded to secure the presence of other medical attendance."

In discussing alleged abandonment of a patient by a physician, the Supreme Court of Washington in Skodje v. Hardy, 47 Wash.2d 557, 288 P.2d 471, stated:

"The asserted abandonment of his patient by Dr. Hardy is not actionable, because it led to no delay or other detrimental result. Mrs. Skodje immediately telephoned another doctor, and her husband was hospitalized, examined, and operated upon later that night."

See also Groce v. Myers, 224 N.C. 165, 29 S.E.2d 553; Stohlman v. Davis, 117 Neb. 178, 220 N.W. 247, 60 A.L.R. 658; Burnett v. Layman, 133 Tenn. 323, 181 S.W. 157.

■ It will be noted that each case uniformly holds there is actionable abandonment only in the absence of *reasonable notice* or of *providing an adequate medical attendant*. (Emphasis added.) One of these two elements is the very crux of abandonment. In the instant case, there is no evidence Mrs. Dewbre was ever without adequate medical attention except for the few minutes she was being transferred from one hospital to another by ambulance. As previously stated, there was no medical evidence that Dr. Lee was negligent in the methods or manner of his treatment. Dr. Davis was advised that Dr. Lee was to leave town, and the former testified positively he assumed the responsibility of looking after Mrs. Dewbre. He testified: "Well, I intended to see the lady during Dr. Lee's absence and decide whether or not she might go to her home or whether or not she should be transferred elsewhere. I assumed that responsibility, yes, sir." The treatment and subsequent operation performed by Drs. Harrison and Selby has been related. In view of the undisputed evidence that Mrs. Dewbre did receive competent medical care until being released by Dr. Harrison, we cannot say appellees sustained their burden of proof of actionable abandonment on the part of Dr. Lee.

■■ Assuming that Dr. Lee was guilty of negligence in abandoning the patient, there must be a causal connection between that negligence and the alleged injuries received by the patient. Bowles v. Bourdon, supra; Kaster v. Woodson, Tex.Civ.App., 123 S.W.2d 981, (Error Refused); Urruita v. Patino, Tex.Civ.App., 10 S.W.2d 582, (Writ Dismissed). In our opinion, no such causal connection has been proved. At the time Mrs. Dewbre was transferred to the Levelland hospital, Dr. Davis sent along

a written memorandum of her symptoms and the treatment she had been given. Dr. Harrison testified "her blood pressure and her pulse were in good condition when she got to the hospital" and that later that night her blood pressure dropped and that "she was in a critical condition". It was then decided to perform an exploratory operation. We, therefore, conclude appellees failed to establish that Dr. Lee's action in leaving the patient had a causal connection with the alleged injuries sustained by the patient.

After reviewing the evidence in the light most favorable to the appellees, we conclude there was no evidence to support the action of the trial court in holding, for venue purposes, that Dr. Lee was negligent and that such negligence was a proximate cause of appellees' injuries.

The order of the trial court in overruling appellant's plea of privilege is reversed and the trial court is instructed to enter an order transferring this cause to the District Court of Castro County, Texas.