GREGORIA RIVERA, ETC., Plaintiffs and Appellees, v. COMMONWEALTH OF PUERTO RICO, Defendant and Appellant.

No. R-69-337.      Decided  May  6,  1971.

*Gilberto Gierbolini, Solicitor General, Dolores Ruiz Zambrana, and Ruth Tentori Lebrón Velázquez, Assistant Solicitors Gen-*

*eral,* for appellant. *Raymundo Suárez Lazú* and *Luis E. Gandía Argüelles* for appellees.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

We must determine whether the death of appellees' predecessor was caused by a negligent omission of the medical personnel of appellant's District Hospital in Fajardo. The trial court concluded that said death was due to said negligence. Furthermore, the amounts for damages granted to each one of the appellees are challenged as excessive.

We conclude that appellant's medical personnel could have committed an error of judgment in failing to timely discover the patient's appendicitis affection in this case, but it was not negligent in the treatment and tests which resulted in the diagnosis of the renal condition also suffered by the patient.

The trial court concluded that:

"3.—Juan Pastor Rivera [plaintiffs' predecessor] had suffered from calculus in the bladder for a year prior to the date of his death, having suffered several attacks of this illness. On October 28, 1963, he became ill presenting symptoms of severe pain in the lower right side of the abdomen; his leg contracted; that he had a temperature, suffered diarrhea, his abdomen was very sensitive, he suffered rebound tenderness; that in this condition he was taken by his wife that same day to the Health Center in Canóvanas, where he was given some medicines to be administered to him in his home.[1]

"4.—The next day, October 29, 1963, his physical and pathological condition remained unaltered and he had to be taken again to the same Health Center; that then, there, they instructed his wife to take him the next day to the District Hospital in Fajardo, for which they procured for her the necessary documents.

"5.—After a night of intense suffering, showing the same symptoms, in the morning of October 30, 1963, he was con-

---

[1] This conclusion is based on the testimony of Pastor Rivera's widow.

fined in the District Hospital in Fajardo, controlled by defendant and its agents, who treated this patient in the exercise of their functions as such; that the admission record shows that the patient had the aforedescribed symptoms and with the aforementioned history, and describes him as being in an 'acute distress'; that their diagnosis on this occasion was 'renal lithiasis' and chronic pyelonephritis; that he was under this diagnosis unaltered until November 5, 1963, notwithstanding he did not show any improvement whatsoever; that on this last date, at 1:00 p.m. an emergency surgical operation was ordered which was performed that same afternoon; that this surgical operation disclosed a condition of acute peritonitis due to the rupture of the appendix; that the peritonitis was so serious that the surgeon could not localize the whole appendix, but rather necrotic residues only.

"6.—Juan Pastor Rivera died in said District Hospital in Fajardo, on November 6, 1963, at 10:00 a.m., as a result of the diffuse acute peritonitis, resulting from a rupture of the appendix in effect during a prolonged period."

The trial court concluded that:

"9.—It is inferred that the death of this patient was the result of a negligent omission of the medical personnel of this institution who had him under observation, treatment, and care for five days. This omission consisted in failing to follow the accepted standard in the practice of medicine in this community, of making a differential diagnosis, using such exclusionary tests as prevail in the profession, when there occurs continuity of persevering pathological symptoms. *Pérez* v. *Commonwealth*, 95 P.R.R. 728 (1968). Had the standard set forth been adopted during the period of time the patient was suffering under the treatment and care of the medical personnel of this hospital, an effective diagnosis and treatment would have been attained to prevent the extensive and virulent diffusion of the peritonitis and the subsequent death of the victim. It may be said here, paraphrasing *Pérez*

v. *Commonwealth, supra,* that the patient gave the opportunity to the physicians, but the physicians did not give it to him."

Said court rendered judgment ordering the Commonwealth to compensate plaintiffs for damages, which it determined amounted to $77,000.

Appellant assigns that the trial court erred in concluding (1) that Pastor Rivera's death was due to a negligent omission of the medical personnel of the District Hospital in Fajardo, in failing to follow the "accepted standard in the practice of medicine in this community of making a differential diagnosis, using such exclusionary tests as prevail in the profession when there occurs continuity of persevering pathologic symptoms"; (2) in finding appellant liable contrary to the evidence, and (3) in excessively estimating the damages suffered by plaintiffs.

It is necessary to consider the preceding findings of fact in the light of the testimony of the witnesses of the case and the documentary evidence consisting of Pastor Rivera's clinical record kept by said hospital.

In view of the technical complexity involved in some points in the evidence, the trial court designated Dr. José Noya Benítez to advise as to the interpretation of the clinical record and the testimony of the medical experts. Said physician appeared in court and was amply interrogated by the legal representation of both parties.

The clinical record in question appears attached to Dr. Noya's report, which states:

"(1) According to the information in the medical record, patient Juan Pastor Rivera was given the treatment according to the medical standards established in similar cases.

"(2) However, it is also my duty to report to you that the information in the medical record is incomplete: in the sense that the cause of the diffuse acute peritonitis is not clearly explained, neither in the clinical record nor in the operation record, nor in the autopsy record."

However, in the clinical record a summary of the case is included which indicates that when Pastor Rivera was admitted and after the corresponding examination, a provisional diagnosis of cystitis, *cysto lithiasis*, obstruction of the neck of the bladder, and pyelonephritis, was made. According to the hospital daily progress chart, multiple laboratory tests were made. The cystoscopy performed on November 4, revealed the existence of a calculus in the bladder. (Afterwards, it was verified that it was about the size of an olive.) The existence of the obstruction in the neck of the bladder and a severe cystitis was also verified and that the possibility of disease in the upper part of the loose bowels should be discarded. On November 5, it was informed that the clinical condition was peritonitis and immediately they proceeded to perform an exploratory laparotomy on the patient. The record of the pathological test of the tissue reveals a generalized peritonitis derived from appendicitis. The operation report states that the entire appendix could not be found, but that it is believed that fragments of the same were cut. The report of the clinical history and autopsy states that Pastor Rivera was admitted complaining of a pain, since a year before in the right flank close to the suprapubic region; that the pain was constant; that he had great difficulty in urinating; that his abdomen was hard and had a marked sensibility in the area indicated; that the operation disclosed a "ruptured appendix"; that they found in the abdomen an acute peritonitis with intense suppuration similar to a ruptured appendix. In another page of the clinical record, there appears that the patient suffered nausea, poor appetite, constipation, and that he expelled gases.

Doctor Noya testified that the typical symptoms of acute appendicitis start with "a pain running to the right upper quadrant . . . . Starting in the epigastrium, which is the upper center of the abdomen, and afterwards to the right quadrant of the abdomen. . . . The pain is accompanied by

nausea, vomiting, temperature, general discomfort . . . spasms and contractions of the muscles occur, and the patient has the tendency to contract the right leg. . . . Diarrhea is not typical, but it may occur"; that the peritonitis described in the record of the autopsy was present several days in the patient's organism; that a painful condition like the one described, with nausea, vomiting, diarrhea, and contractions of the leg, high blood count; "In view of a probable appendicitis diagnosis, acute appendicitis, an operation is indicated as soon as possible. . . . The best treatment is the timely operation." Cross-examined as to whether in this case all the measures established by the medical science in the community were taken, Dr. Noya answered that ". . . according to the information in the record, the information in the record is incomplete . . . if it were complete [the record] . . . I would say that, but as it is not complete, I cannot say whether in a case where the appendix has not been found other measures would have been taken. . . . He was treated according to the standards established in similar cases, but I modify that. . . . As it does not appear. . . . If the record were completely clear, I would affirm that up to there; but since there is a doubt as to the diagnosis, as to what caused the peritonitis. . . ." He added that "From the record it appears so because the record is not complete . . . but if the appendix does not appear, it must be found out where it is. . . ." Lastly, he testified that in the record there is no evidence that any perforated organ caused the peritonitis; that in order that an infection in an organ cause peritonitis, "One of these organs [he had previously mentioned the liver, the stomach, the gall bladder, and the large intestine] can cause infection only if it is perforated towards the outside."

Doctor Toro Goyco, who performed the laparotomy in this case, testified that:

"That day, October 30, as I saw it, and it appears from the record, this man was examined in emergency by the emergency

physician and was taken to the surgery department, the man was taken by this physician walking on his own feet, and carrying some envelopes of the kind used to keep X-ray pictures, he was carrying some X-ray pictures in his hands and was taken to the surgery department to be admitted to surgery, to the department of specialists in urology.

".       .       .       .       .       .       .       .

"This patient was confined in the Department of Urology, urino-antibiotics continued to be administered to him, rest in bed was recommended, etc., and the aforementioned urino-antibiotics were administered to him, the urologist continued treating him and on November 4, the latter performed an operation on him which had been previously planned when the necessity or possibility of the confinement of the patient was considered, one of the operations to be performed on the patient was a cystoscopy, that is, a direct visual examination with a light.

".       .       .       .       .       .       .       .

"As it appears from the record, the physician who examined him stated that his discomfort had persisted for years, and the physician determined, in the light of the symptoms, that it was due to his disease, urinary infection."

Having knowledge that Dr. Noya said that the patient's record was not complete, he answered in synthesis, that it was, because it reveals the surgical operations performed on the patient, the findings, the initial and postoperative diagnosis; that he was present during the autopsy and verified what he saw in the laparotomy performed on the body of Pastor Rivera, there appearing from the record all the occurrences in a brief and concise manner; that possibly, when Dr. Noya refers to the record as incomplete, he means that a more detailed explanation should have been given; that from the record it does not appear that the patient had vomiting, nausea, or diarrhea; that according to the record the patient did not present symptoms of appendicitis when he arrived at the hospital.

. The trial court expressed to Dr. Toro Goyco that its reaction to the evidence was that Pastor Rivera's appendicitis

was susceptible of diagnosis when he was confined to the hospital; that the medical authorities therein obstinately persisted on a limited diagnosis and paid no attention to the finding of other factors of the general latent symptoms, inasmuch as the death was produced by other circumstances; that if "this man had been correctly diagnosed on the 30th, he would have been saved, the appendix would have been removed . . . the mistake was in failing to scan, that is, failing to make a persistent diagnosis. . . ." Said physician told the court that the symptoms presented by the patient "were confusing due to the latter's extensive history"; that the diagnosis was not erroneous because "he was suffering said illness but . . . that was not all. . . . The physician was confused, and that that is humanly possible and it is occurring every day, the patient, well, suffers a disease and it is confusing. . . ."

The courts have established certain standards applicable to cases like the one at bar. They are the following:

1.—There is a presumption, in the absence of evidence to the contrary, that a degree of reasonable care has been exercised and that the adequate treatment was administered to the patient. The plaintiff is bound to present sufficient evidence to controvert this presumption, and to that end the evidence should show that there is more than a mere possibility that the damage was due to the physician's failure to do his duty. It is necessary that the relation of causation should not be the product of mere speculation or conjecture, but of the preponderance of the evidence, namely, that it was more probable that the harm resulted from the negligence imputed by the plaintiff. He cannot be required in this respect to exclude every other possible causation of the damage. If the evidence discloses more than one possible cause of the damage, the physician cannot be adjudged liable unless the evidence as a whole shows that the negligent act for which he

is liable is the most probable. *Sáez* v. *Municipality*, 84 P.R.R. 515, 522–523 (1962).

■ 2.—If the physician exercises due care and properly treats the patient upon diagnosis according to the prevailing practice in the community, that is to say, if he complies with the acknowledged professional requirements, that is, the accepted practice professionally speaking, in a specific place and time, and acts according to the same, he incurs no liability even though the diagnosis proves to be a mistaken judgment. *Pérez* v. *Commonwealth, supra.*

■ 3.—If he examines the patient adequately, he is not liable for a mistaken diagnosis. However, in *Hicks* v. *United States,* 368 F.2d 626 (4th Cir. 1966), the court said that where the symptoms are consistent with either of two possible conditions, one lethal if not attended to promptly, the doctor cannot limit himself to make a cursory examination and then release the patient. The fact that of the two possible conditions gastroenteritis is the most likely to occur and the more infrequent is the other one, that is, a high intestinal obstruction, does not excuse a failure to make inquiries and perform well-known additional tests to distinguish one condition from the other; that the defendant physician was negligent in failing to comply with the accepted standards in these cases of making inquiries as to diarrhea and he failed to make a rectal examination which, according to the evidence, were part of the proper procedure in cases like this, in order to rule out gastroenteritis and make a definite diagnosis of high intestinal obstruction.

■ 4.—The physician must have latitude in the exercise of reasonable judgment. He is not liable for an error of judgment, unless the error is obvious and substantial according to said prevailing practice.

■ 5.—When the symptoms are not perceptible in the

usual and general manner (obscure symptoms), liability is not incurred by mistake in the diagnosis.

■ 6.—The testimony of other physicians that they would have made a different diagnosis or the disagreement between them as to the diagnosis, as well as the fact that another physician or surgeon would decide to treat the case differently or by following a different course of treatment other than those used by the defendant physician, by itself does not justify the conclusion that the latter was negligent in making an erroneous diagnosis. *Hicks* v. *United States, supra; Fisher* v. *Wilkinson*, 382 S.W.2d 627 (Mo. 1964); *Smith* v. *Yohe*, 194 A.2d 167 (Pa. 1963); *Skodje* v. *Hardy*, 288 P.2d 471 (Wash. 1955); *Lawless* v. *Calaway*, 147 P.2d 604 (Cal. 1944); *Hodgson* v. *Bigelow*, 7 A.2d 388 (Pa. 1939); *Pearce* v. *United States*, 236 F.Supp. 431 (D.C. Okla. 1964); *Stottlemire* v. *Cawood*, 213 F.Supp. 897 (D.C. Dist. of Columbia); *McHugh* v. *Audet*, 72 F.Supp. 394 (D.C. Pa. 1947).

In *Skodje, supra*, as in *Lawless, supra*, mistaken diagnosis of colitis in the former, and ptomaine poisoning caused by having eaten moldy bologna the day before, in the latter, were made. In both cases the patient was suffering appendicitis. In *Skodje, supra*, the patient himself informed the defendant physician of the possibility of suffering an attack of appendicitis. In *Lawless, supra*, the defendant physician, the first time he examined the patient, indicated the possibility of an attack of appendicitis, but he continued treating him for several days and when his condition became worse, he was operated on and a few hours later he died of peritonitis as a result of a ruptured appendix. In both cases the claim for damages against the defendant physician was dismissed, since there was no proof of negligence in failing to timely diagnose the appendicitis or that his diagnosis was not consistent with that of other physicians in the community under similar circumstances.

■ In the case at bar there was no evidence that appellant's physicians, upon examining and treating the deceased patient, did not act according to the medical standards prevailing in the community for cases like this. Pastor Rivera was admitted to the hospital with a prolonged and well-known history of a renal condition. According to the medical record he did not show the typical symptoms of appendicitis, but rather symptoms which perfectly agreed with his medical history of renal condition. In effect, the initial diagnosis was not mistaken, since a cystoscopy performed the day before he was operated on showed that he had a calculus about the size of an olive lodged in the neck of the bladder which produced an obstruction of the urine, acute pain, and intense infection.

The medical record does not show that the patient was not properly treated. Since his arrival he was carefully examined, was submitted to all the corresponding clinical and laboratory tests, to some tests more than once.

The expert witness designated by the court concluded that "he had a treatment according to the medical standards established for similar cases." He only criticized the medical record for being incomplete "in the sense that the cause of acute peritonitis is not clearly explained. . . ." On the contrary, the surgeon who operated on Pastor Rivera and who was present at the autopsy of his body showed that said criticism could only refer to the fact that a more extensive explanation should have been given, since everything that occurred appears from the record, but briefly and concisely stated.

Doctor Noya testified, in effect, that the procedure he follows in cases like this is to verify the diagnosis by repeated observation and differential tests in view of a more acute problem; that "This is not a normal case . . . that the prevailing standards were complied with, the habitual standards in a normal case, and when the case became difficult, then, the necessary treatment was not administered." He justified this

conclusion on the basis that "the record is not complete be-
cause . . . if the appendix does not appear they must find out
where it is. . . ." Lastly, he testified that no evidence appears
from the record in the sense that any perforated organ had
caused the peritonitis, that "One of these organs [he had
previously mentioned the liver, the stomach, the gall bladder,
and the large intestine] can cause infection only if it is per-
forated towards the outside."

As Dr. Toro Goyco indicated upon being examined by the
court, the symptoms presented by the patient were confusing
because of the extensive history of the patient's renal condi-
tion; that although the diagnosis was not mistaken, the
patient was suffering from another additional disease. He
testified, in effect, that as a result of the patient's history, his
symptoms confused the physicians, which is humanly possible
and is occurring every day.

In our opinion, the evidence shows that the patient's
symptoms in this case were not easily detectable, were confus-
ing, as they actually confused the physicians, notwithstanding
the treatment and multiple tests to which the patient was sub-
mitted. The record shows that the patient did not present the
most typical symptoms of appendicitis. Doctor Noya's testi-
mony was to the effect that the prevailing standards were
complied with in the treatment of the patient and in the
diagnosis of his ailment, except that he would have tried to
clarify the diagnosis by repeated observation and differential
tests in view of a more acute problem. There was no evidence
that the physicians failed to perform inquiries or tests which
would have permitted them to timely discover the appendicitis
as in *Hicks, supra.* In this case appellant's physicians never
did initially indicate the possibility that the patient was
suffering from appendicitis, as in *Lawless, supra.*

This case is distinguishable from *Pérez v. Commonwealth,
supra.* The latter involves a girl who had swallowed a bean
and the physicians, although they diagnosed that she had

swallowed a foreign body, sent her to her house because the result of the X-rays taken was negative. The evidence clearly showed that, according to the prevailing standards, they failed to practice an examination of the pharynx inside where the trachea and the larynx are; that the girl's reflexes showed that she was choked; that the X-ray plate was not sufficient because in a case like this the plate showed negative. On the contrary, in the case at bar the typical symptoms of appendicitis were not present; the symptoms were so precisely in accord with the history of the renal condition which the patient had been suffering, that they confused the physicians and did not permit them to timely discover the appendicitis which, according to the history of the operation and the protocol of the autopsy, caused the acute peritonitis which, in turn, caused the patient's death. Doctor Noya himself infers that even the postoperative diagnosis of appendicitis was not fully verified, since the appendix did not appear, and there was doubt as to the cause of the peritonitis.

By virtue thereof, we must conclude that the judgment of December 12, 1969, rendered by the trial court in this case, must be reversed.

Mr. Justice Hernández Matos dissented. Mr. Justice Torres Rigual did not participate herein.