

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00423-CV

Art **TONTIPLAPHOL**, M.D.; Bongsun "Sunny" Rich; and Methodist Healthcare System of
San Antonio, Ltd., L.L.P. d/b/a Methodist Hospital,
Appellants

v.

Melba Ortiz **URDIALES**, as Personal Representative of the Estate of Graciela Urdiales,
Deceased; Ricardo Urdiales; Ricardo Miguel Urdiales; Melba Ortiz Urdiales; and Gerardo
Daniel Urdiales,
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CI21571
Honorable Monique Diaz, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Irene Rios, Justice
               Adrian A. Spears II, Justice

Delivered and Filed: April 30, 2025

REVERSED AND RENDERED IN PART; REMANDED

Art Tontiplaphol, M.D., Bongsun "Sunny" Rich, N.P., Methodist Healthcare System of

San Antonio, Ltd., L.L.P. d/b/a Methodist Hospital (collectively appellants) bring this

interlocutory appeal from the trial court's order denying their Chapter 74 motions to dismiss

healthcare liability claims regarding the death of Graciela Urdiales brought by Graciela's husband,

children, and the personal representative of her estate (collectively appellees).[1]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) ("A person may appeal from an interlocutory order of a district court . . . that denies all or part of the relief sought by a motion under Section 74.351(b) . . . ."). In three issues, appellants contend that appellees failed to timely serve an expert report, and the trial court abused its discretion in denying dismissal of: (1) appellees' newly pleaded derivative and vicarious liability claims; (2) claims asserted by Melba as personal representative of Graciela's estate; and (3) appellees' claims of patient abandonment, euthanasia, and violations of section 1983 of Title 42 of the United States Code ("section 1983 claims"). We reverse and render, in part, and remand.

## I. BACKGROUND

On November 3, 2020, Graciela, who was seventy-two years old, was admitted to Methodist Hospital. At the time of Graciela's admission, she suffered from oral ulcers and had a history of pulmonary fibrosis that required oxygen supplementation. After admission, Graciela was diagnosed with significant weight loss due to dehydration and malnutrition, acute renal failure, anemia, hypoxic respiratory failure, and cardiac instability.

According to appellees' live petition, on November 8, 2020, Graciela started choking and was resuscitated. Dr. Tontiplaphol and nurse practitioner Rich told Gerardo Daniel to "let her go" and "there's nothing more we can do." Both healthcare providers, according to appellees, refused Gerardo Daniel's request that Graciela be kept alive long enough to say goodbye to her husband, and they "refused and withdrew life support." Graciela died on November 8, 2020.

---

[1] Respectively, these parties are Ricardo Urdiales, Ricardo Miguel Urdiales, Gerardo Daniel Urdiales, Melba Ortiz Urdiales, Individually, and Melba Ortiz Urdiales, as personal representative of the Estate of Graciela Urdiales, deceased.

On November 1, 2022, appellees filed their original petition, which named appellants and Methodist Healthcare Ministries of South Texas, Inc. and HCA Health Services of Texas, Inc. as defendants. Appellants were served with citation, and they timely answered. Appellees did not serve an expert report within the 120-day period applicable to each appellant. *See id*. at § 74.351(a).

After the expert-report deadlines, appellees e-mailed an expert report signed by Sumit Gupta, M.D. Appellants nevertheless filed motions to dismiss, asserting that appellees had failed to timely serve an expert report in accordance with section 74.351 of the Texas Civil Practice and Remedies Code. *See id*.

On April 27, 2023, appellees filed their second amended petition, responded to appellants' motions to dismiss, and arranged, for the first time, for service of citation on Methodist Healthcare Ministries of South Texas, Inc. and HCA Health Services of Texas, Inc. Also on April 27, 2023, Melba filed an original petition in intervention as personal representative of Graciela's estate. In these filings, appellees generally argued that a combination of newly pleaded vicarious or derivative liability claims, Melba's assertion of a healthcare liability claim as the personal representative of Graciela's estate, and Dr. Gupta's report substantiated denial of appellants' motions to dismiss. Appellants filed replies in support of their motions to dismiss, and the trial court held a hearing on appellants' motions to dismiss.

On June 6, 2024, the trial court signed an order, tendered by appellees, providing:

It is Ordered, Adjudged, and Decreed that the motions to dismiss are granted as to the direct liability of these defendants for plaintiffs' health care liability claims asserted in their individual capacities. These defendants' possible derivative or vicarious liability for plaintiffs' claims being asserted against the defendants who have not yet appeared has not been adjudicated.

Plaintiffs' patient abandonment/euthanasia/§ 1983 claim is not dismissed because it is either outside the § 74.351 expert report requirement, or the claim is novel and

Texas law is unsettled as to this statute's applicability to this claim, justifying an extension of the deadline for plaintiffs' expert report that was served on April 18, 2023.

The granting of defendants' motions to dismiss does not apply to parties not presently before the Court: defendants Methodist Healthcare Ministries of South Texas, Inc. and HCA Health Services of Texas, Inc. and intervenor Melba Ortiz Urdiales, in her capacity as personal representative of the estate of Graciela Urdiales.

(hereinafter "dismissal order" or "dismissal order tendered by appellees"). Appellants timely appeal from the dismissal order.[2]

## II. DISCUSSION

### A. Standard of Review

We generally review a trial court's order on a motion to dismiss a health care liability claim under an abuse-of-discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam).

---

[2] We note that, also on June 6, 2024, the trial court signed an order, tendered by Methodist Hospital, that provides:

> It is therefore ordered, adjudged, and decreed by this Court that any and all claims and causes of action by and between Plaintiffs the Estate of Graciela Urdiales, Deceased, Ricardo Urdiales, Ricardo Miguel Urdiales, Melba Ortiz Urdiales, and Gerardo Daniel Urdiales and Defendant Methodist Healthcare System of San Antonio, Ltd., L.L.P. d/b/a Methodist Hospital be and are hereby dismissed with prejudice.

(hereinafter "dismissal order tendered by Methodist"). Appellants filed motions to reconsider regarding the dismissal order tendered by appellees, contending that it impermissibly divides appellees' healthcare liability claims into direct liability claims, vicarious liability claims, and claims of patient abandonment, euthanasia, and violations of section 1983. The trial court did not rule on appellants' motions to reconsider. Appellants filed a notice of appeal only as to the dismissal order tendered by appellees, and it is the only order before us. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) ("A person may appeal from an interlocutory order of a district court . . . that *denies all or part of the relief sought* by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351[.]") (emphasis added).

**B.** **Newly Pleaded Derivative and Vicarious Liability Claims**

In appellants' first issue, they argue that the trial court abused its discretion by not dismissing appellees' newly pleaded claims of derivative and vicarious liability. Liberally construing appellees' brief, they respond by arguing that they were afforded a new 120-day period as to all defendants after Methodist Healthcare Ministries of South Texas, Inc. and HCA Health Services of Texas, Inc. filed their original answers. In the trial court, appellees argued:

> [Appellees] have filed a second amended petition and requested citations for two new defendants: Methodist Healthcare Ministries of South Texas, Inc. and HCA Health Services of Texas, Inc.[3] [Appellees'] second amended petition pleads vicarious liability theories that will hold these two new defendants liable for the acts of the three previously sued defendants, and vice versa. . . . When these two new defendants file their original answers, [appellees] will have 120 days to file their expert reports as to them. Because [appellees'] expert report will be timely as to the two new defendants, it will be effectively timely as to all of them based on the vicarious liability allegations.

Appellants responded that the statute does not permit appellees to re-start the 120-day period as to the claims that appellees asserted against them by arranging for service of citation of previously-named defendants and adding claims of vicarious liability. Appellees' responsive argument, as we understand it, is twofold: (1) a "re-starting" starting argument, and (2) a vicarious liability argument.

Section 74.351(a) provides:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date *each* defendant's original answer is filed or a later date required under Section 74.353, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for *each* physician or health care provider against whom a liability claim is asserted.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (emphasis added). Appellees' re-starting argument is that the first clause of section 74.351(a) — relating to "each defendant" — means each

---

[3] Methodist Healthcare Ministries of South Texas, Inc. and HCA Health Services of Texas, Inc. are not parties to this appeal.

defendant who just filed an answer and the second clause — relating to "each physician or health care provider" — means all defendants, including those who have already filed an answer. Our analysis of an earlier version of section 74.351(a) in *Osonma v. Smith* No. 04-08-00841-CV, 2009 WL 1900404, at *2 (Tex. App.—San Antonio July 1, 2009, pet. denied) (mem. op.), is instructive. In *Osonma*, the prior version of section 74.351(a) keyed the 120-day deadline to the "original petition."[4] *Id*. at *1. Healthcare defendants that were added in a subsequent petition argued that the phrase "original petition" meant that the 120-day deadline was keyed to the claimant's first-filed petition, thereby creating only one 120-day as to all healthcare defendants, including those who were later joined. *Id*. at *2. We rejected that argument, holding that "it refers to the first-filed petition *naming that defendant physician or health care provider as a party to the lawsuit*." *Id*. (emphasis added). Like the later-joined healthcare defendants in *Osonma*, appellees essentially argue that there is only one 120-day deadline in a healthcare liability lawsuit, except instead of never resetting, appellees contend that it resets for all defendants each time a newly-joined healthcare defendant files its original answer. A plain reading of the current statute, as informed by our plain reading of its predecessor in *Osonma*, does not support appellees' re-starting argument. *In re Off. of the Att'y Gen. of Texas*, 456 S.W.3d 153, 155 (Tex. 2015) ("We construe the words of a statute according to their plain meaning . . . and in the context of the statute's surrounding provisions[.]") (internal citations omitted). Instead, the statute's reference to "each defendant" and service on "that party" indicate that the 120-day deadline is calculated specifically for a defendant based on that particular defendant's answer date. *See Osonma*, 2009 WL 1900404, at *2. The phrase "for each physician or health care provider against whom a liability claim is

---

[4] Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)).

asserted" indicates that the requirement applies only for a defendant that is a physician or health care provider. *See id.*

Appellees' vicarious liability argument is that a sufficient expert opinion as to a vicarious liability theory against a defendant who recently answered also suffices as to a vicariously liable defendant who had previously answered regardless of whether the 120-day period has lapsed as to the defendant who previously answered. In *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 629 (Tex. 2013), the healthcare defendant argued that a trial court must dismiss a claim if the expert report did not address both direct and vicarious lability theories. *Id*. at 629. The Texas Supreme Court noted that "[a] report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue." *Id*. at 630. It held that "an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case." *Id*. at 632. An underlying rationale in *Certified EMS* is that the time for filing "an expert report that adequately addresses at least one pleaded liability theory" is the 120-day period applicable to each appellant. *See id*.; *see also Maxwell v. Seifert*, 237 S.W.3d 423, 426 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (rejecting a healthcare liability claimant's contention that a newly-pleaded claim of failure to disclose risks constituted a "distinct health care liability claim" from the original claim of negligence and that a "a new 120–day time line to file an expert report with regard to this claim began when [the claimant] amended her petition.").

We sustain appellants' first issue.

## C.     Personal Representative

In appellants' second issue, they argue that the trial court abused its discretion in denying dismissal of claims asserted by Melba as personal representative of Graciela's estate. Appellees

respond by arguing that "[f]our of the defendants answered the personal representative's petition in intervention, creating a new deadline for serving an expert's report as to them that was timely served."

Appellees' argument is akin to the one made by the healthcare liability claimant in *Intracare Hospital North v. Campbell*, 222 S.W.3d 790, 792 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In that case, Cindy Campbell, as next friend of her adult son, filed a healthcare liability claim that alleged the defendants rendered negligent healthcare. *Id*. "Campbell filed an expert report more than 120 days from the filing of her claims asserted as Brown's next friend, but fewer than 120 days from the amendment of her petition to show that she was Brown's guardian." *Id*. The defendants argued that Campbell's expert report was untimely, and they moved to dismiss. *Id*. at 794. Campbell responded by arguing that:

> Brown's claims were not properly before the trial court until March 20, 2006 — when she amended her petition to assert those claims as Brown's guardian — because she had not had capacity to represent Brown in the lawsuit as his next friend and thus could not properly have asserted any claims on his behalf before then.

*Id*. "Campbell concluded that the 120–day deadline to file the expert report for Brown should thus be calculated from the time that 'Brown, through Guardian, was properly brought before the Court.'" *Id*. Our sister court in *Campbell* noted that *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005), was "not fully on point," but that it nevertheless supported "the conclusion that Campbell's expert report was untimely[,]" holding:

> If a claim for which the plaintiff lacks capacity to sue is deemed cured by the representative's later obtaining capacity, so that limitations runs from the date of the claim's first filing (rather than from the date of the cure), then the same should be true for a health-care-liability claim brought by one asserting, but actually lacking, capacity to sue: upon cure, it is as if the claim had originally been brought in the correct capacity — i.e., the corrected capacity "relates back" to the claim's original filing — so that the 120–day deadline began running from the date of the claim's filing, rather than from the date of the cure.

*Campbell*, 222 S.W.3d at 796–97; *see Austin Nursing Center*, 171 S.W.3d at 853 ("The estate commenced the suit before limitations expired; Lovato cured the defect in her capacity before the case was dismissed. Under those circumstances, the estate had standing and was ultimately represented by a person with capacity to pursue the claim on its behalf.").

We note that the appellants in *Campbell* specially excepted to Campbell's capacity to maintain her claims as a "next friend" after she filed her original petition, and appellees in this case emphasize that the appellants did not similarly specially except. *Campbell*, 222 S.W.3d at 793. However, this distinction does not sufficiently undermine the rationale in *Campbell* because, while special exceptions may have prompted Campbell to cure her lack of capacity, "[t]he trial court did not rule on [the healthcare defendants'] special exceptions or motion to show capacity, nor did it abate the case during the time that Campbell would later seek to cure her lack of capacity through a guardianship proceeding." *Id*.

Appellees also argue that several appellants filed separate answers to the intervention petition filed by Melba in her representative capacity. According to appellees, these answers trigger a new expert report deadline for Melba in her representative capacity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) ("In a health care liability claim, a claimant shall, not later than the 120th day after the date *each defendant's original answer* . . . serve on that party or the party's attorney one or more expert reports . . . .") (emphasis added). Appellants respond by arguing that the statutory definition of "claimant" precludes the re-starting of the deadline to serve an expert report under section 74.351(a). Under the statute,

> "claimant" means "a person, *including a decedent's estate*, seeking or who has sought recovery of damages in a health care liability claim. All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered *a single claimant*.

*Id*. at § 74.001(a)(2) (emphasis added).

Harmonizing sections 74.001(a)(2) and 74.351(a), we hold that section 74.001(a)(2)'s designation of "all persons claiming to have sustained damages" as a "single claimant" precludes section 74.351(a)'s phrase of "each defendant's original answer" from requiring consideration of whether that defendant has answered each particular plaintiff, if all plaintiffs are a "single claimant." *See Sommers for Alabama & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 757 (Tex. 2017) ("Legislative enactments of the same subject should be harmonized whenever possible."). Instead, "each defendant's original answer" is the answer filed in response to the "single claimant's" petition.

We sustain appellant's second issue.

**D.    Patient Abandonment, Euthanasia, and Section 1983 Claims**

In appellants' third issue, they argue that the trial court abused its discretion in denying dismissal of appellees' claims of patient abandonment, euthanasia, and violations of section 1983 because appellees failed to rebut the presumption that these claims were governed by section 74.351(a). *See Loaisiga v. Cerda*, 379 S.W.3d 248, 252 (Tex. 2012) ("We hold that the [Texas Medical Liability Act] creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement are [health care liability claims]."). Appellees respond by arguing that their claims of patient abandonment, euthanasia, and violations of section 1983 were either (1) not healthcare liability claims or (2) if determined to be healthcare liability claims, then such a determination resolved a novel issue that entitles appellees to an equitable extension, making Dr. Gupta's report timely.

**1.    Healthcare Liability Claims**

In appellees' live petition, they pleaded;

Patient Abandonment, Violation of Civil Rights, and Euthanasia

[] [Appellants] failed to act with reasonable care in improperly withholding or withdrawing life sustaining treatment from Graciela against her family's stated wishes contrary to the Texas Advance Directive Act. Tex. Health & Safety Code Ann. § 166, et seq. [Appellants] unilaterally severed the physician-patient relationship without reasonable notice or without providing adequate alternative medical care at a time when there was the necessity of continuing medical attention. [Appellants] abandoned Graciela and committed involuntary euthanasia by depriving her of life sustaining treatment.

[] [Appellants'] decision to withhold or withdraw life-sustaining treatment constituted state action and implicated Graciela's fundamental right to life that is protected by the due process clause. [Appellants'] thereby violated Graciela's civil rights.

These allegations triggered *Loaisiga's* rebuttable presumption. *See id*.; *see also Lake Jackson Medical Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 540 (Tex. 2022) (quoting *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179–80 (Tex. 2012)) (observing that the statutory definition of a healthcare liability claim "includes three basic elements: (1) the defendant must be a physician or health care provider; (2) the claim must concern 'treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care'; and (3) the defendant's conduct must proximately cause the claimant's injury or death.").

Neither in the trial court nor before us do appellees attempt to rebut the presumption articulated in *Loaisiga* 379 S.W.3d at 252, regarding their claims of patient abandonment, euthanasia, and violations of section 1983. Instead, appellees flip the presumption by arguing that "there is no authority classifying" these claims as healthcare liability claims.[5] However, we are

---

[5] Appellees reference *T.L. v. Cook Children's Medical Center*, 607 S.W.3d 9, 61 (Tex. App.—Fort Worth 2020, pet. denied), for the proposition that "[a] physician still has liability for the now codified common law claim of patient abandonment, and along with a health care facility can also *be liable* for discontinuing life-sustaining treatment and causing the death of a terminally ill patient." (Emphasis added). However, appellees direct us to no passage in *T.L.* wherein a claim of patient abandonment or euthanasia was held to not be a healthcare liability claim. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

bound by the rebuttable presumption rule articulated in *Loaisiga*. *See Brazos Elec. Power Coop., Inc. v. Texas Comm'n on Env't Quality*, 576 S.W.3d 374, 382 n.6 (Tex. 2019) ("Certainly we would expect the courts of appeals to treat our opinions as binding precedent . . . .").

Moreover, even before the rebuttable presumption rule articulated in *Loaisiga v. Cerda*, 379 S.W.3d 278, 252 (Tex. 2012), at least three of our sister courts held that a claim of patient abandonment constitutes a healthcare liability claim. *See Granek v. Texas State Bd. of Med. Examiners*, 172 S.W.3d 761, 766 n.2 (Tex. App.—Austin 2005, no pet.) ("Patient abandonment is a form of breach of duty in a medical malpractice action."); *King v. Fisher*, 918 S.W.2d 108, 111 (Tex. App.—Fort Worth 1996, writ denied) ("Abandonment is merely another way of alleging a breach of duty."); *Lee v. Dewbre*, 362 S.W.2d 900, 902 (Tex. Civ. App.—Amarillo 1962, no writ) ("Alleged abandonment of a patient by a doctor is one type of wrong which may give rise to a claim for malpractice."). Even if the rebuttable presumption rule in *Loaisiga* 379 S.W.3d at 252, did not exist, appellees fail to explain why we should part with our sister courts' holdings that a claim of patient abandonment is a healthcare liability claim.

**2.      Equitable Extension**

Lastly, appellees, relying on *Rogers v. Bagley*, 623 S.W.3d 343, 357–58 (Tex. 2021), contend that the classification of their claims of patient abandonment, euthanasia, and violations of section 1983 present a novel legal question that has not been answered, justifying an equitable extension for the filing of a section 74.351 expert report. Appellees' reliance on *Rogers* is misplaced.

In *Rogers*, a claimant argued that her section 1983 claims were not healthcare liability claims, and even if they were, the statute's expert report requirement was preempted by federal law. *Id*. at 348. The Texas Supreme Court held that "[b]ecause the [statute's] expert-report

requirement would not cause reliably different outcomes in section 1983 cases brought in state and

federal court, we hold that section 74.351 is not preempted by section 1983." *Id*. at 356. Regarding

remand in the interest of justice, the Texas Supreme Court wrote:

> Because section 74.351 mandates dismissal with prejudice, a determination that a claimant failed to serve the required expert report in a health care liability claim ordinarily results in rendition. However, we have broad authority to remand a case to the trial court when justice so requires. The case for remand is especially compelling in cases where, as here, we have substantially clarified the law.
>
> In this case, [the claimant's] failure to serve the requisite expert reports was not a mere error in interpreting section 74.351. Rather, our conclusion that an expert report was required in this case turns on a *previously unaddressed* preemption question. Because our decision today substantially clarifies that *novel issue*, we will remand [the claimant's] claims against the individual defendants to the trial court and direct the trial court to provide [the claimant] an additional sixty days to comply with section 74.351.

*Id*. at 357–58 (internal citations omitted) (emphasis added).

Appellees' request for an equitable extension such as the one articulated in *Rogers* for their

section 1983 claim is unavailing. In *Rogers*, the United States Supreme Court denied the

claimant's writ of certiorari on January 10, 2022. Appellees filed their original petition on

November 11, 2022. Accordingly, at the time appellees filed suit there was no "novel issue" and

the law had already been "substantially clarified" regarding appellees' section 1983 claim. The

same may be said as to appellees' claims of patient abandonment and euthanasia because the

rebuttable presumption articulated in *Loaisiga*, 379 S.W.3d at 252, and the "three basic elements"

that guide the classification of healthcare liability claims, *Gaytan*, 640 S.W.3d at 540, predate

appellees' lawsuit.

We sustain appellants' third issue.

### III. CONCLUSION

We reverse the trial court's dismissal order and render judgment dismissing with prejudice the claims asserted by appellants against appellees. We further remand the cause to the trial court for it to consider the amount of reasonable attorney's fees and costs of court incurred by appellants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).[6]

                                        Rebeca C. Martinez, Chief Justice

---

[6] Section 74.351(b) provides:

> If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:
>
> > (1)    awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and
> >
> > (2)    dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).