OPINION

**INTRACARE HOSPITAL NORTH and Terry Bauske, Appellants,**

v.

**Cindy CAMPBELL, as Next Friend and Guardian of Frank Brown, Appellee.**

**No. 01–06–00356–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 29, 2007.

Rehearing Overruled May 31, 2007.

Erin E. Lunceford, Joel Randal Sprott, Munisteri, Sprott, Rigby, Newsom & Robbins, P.C., Houston, TX, for appellants.

Amy Elizabeth Hawk, Patrick John Pacheco, Dow Golub Berg & Beverly, LLP, Houston, TX, for appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

This is an interlocutory appeal from the partial denial of a motion to dismiss health-care-liability claims for failure timely to file an expert report. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 51.014(9) (Vernon Supp.2006). Appellee, Cindy Campbell, filed the relevant health-care-liability claim on behalf of her adult son, Frank Brown, as his next friend. Campbell was later appointed Brown's guardian, after which time she amended her petition to assert the claims as Brown's guardian.

Campbell filed an expert report more than 120 days from the filing of her claims asserted as Brown's next friend, but fewer than 120 days from the amendment of her petition to show that she was Brown's guardian. We determine whether the trial court erred in determining, in effect, that the 120–day expert-report deadline was tolled until Campbell was appointed Brown's guardian. We reverse the order in part and remand the cause for further proceedings consistent with this opinion.

## Background

According to Campbell's petition, on August 13, 2004, Brown, who suffered from paranoid schizophrenia, was transferred from the facilities of appellant IntraCare Hospital North ("IntraCare") to another adult supervisory facility. Brown escaped while at the new facility. He was found just over two days later, disoriented, dehydrated, hungry, sunburned, scratched, and bruised.

On November 4, 2005, Campbell filed her original petition against, among others, appellants IntraCare and Terry Bauske (together, "appellants"), upon whose advice Campbell alleged that Brown had been transferred.[1] Campbell's original petition alleged that she sued "individually and as next friend of ... Brown." In the petition's factual-allegation section, Campbell alleged that Brown was "a nineteen-year old suffering from paranoid schizophrenia." Against appellants, Campbell alleged causes of action for negligence (the duty to maintain adequate care, supervision, and control of Brown); intentional infliction of emotional distress (reckless failure of same duties); and medical malpractice (negligence and negligent referral to an allegedly sub-standard facility) and

1. Some other defendants were eventually non-suited. Those who were not non-suited are not parties to this appeal.

sought attorney's fees and actual, exemplary, and mental-anguish damages.

■ On November 30, 2005, appellants specially excepted on the ground that Campbell lacked the capacity to sue as the next friend of Brown, whom she had also alleged was an adult, because Campbell was not his legal guardian. On December 1, 2005, appellants filed an unverified "Motion to Determine the Legal Capacity of Cindy Campbell," in which they requested that the trial court order Campbell "to produce evidence of her legal capacity to bring this suit ..." within 10 days or, alternatively, that Campbell's next-friend claims "be dismissed for want of legal capacity to sue." Appellants did not plead lack of capacity in their answer.[2] The trial court did not rule on appellants' special exceptions or motion to show capacity, nor did it abate the case during the time that Campbell would later seek to cure her lack of capacity through a guardianship proceeding. See Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 853 n. 7 (Tex.2005) (indicating that if trial court concludes that capacity is lacking, court should abate case and give plaintiff reasonable time to cure defect).

On January 13, 2006, Campbell filed her first amended petition, in which she alleged that she brought suit individually and as next friend of Brown, "an incapacitated person," under Texas Rule of Civil Procedure 44. See TEX.R. CIV. P. 44 ("Minors, lunatics, idiots, or persons non compos mentis who have no legal guardian may sue and be represented by 'next friend' under the following rules...."). She also alleged that her son was a "mentally incapacitated adult." Campbell realleged the same matters relating to Brown's claims in her second amended petition, which she filed on February 15, 2006.

On March 2, 2006, the Madison County Court appointed Campbell as Brown's legal guardian. On March 20, Campbell moved the trial court in the present case to have the guardianship recognized. She simultaneously filed a third amended petition, alleging that her claims were asserted individually and on behalf of Brown—both as his guardian and his next friend. On April 4, 2006, the trial court signed an agreed order recognizing Campbell's guardianship of Brown.

On March 6, 2006—after Campbell had been appointed Brown's guardian, but before she had amended her petition to allege that guardianship—appellants moved to dismiss Brown's and Campbell's claims against them for Campbell's failure to serve an expert report on them within 120 days of the claim's filing.[3] See Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 864, 875, 884, 898–99 (requiring claimant asserting health-care-liability claim to serve expert report on opposing parties within 120 days of claim's filing; further providing that, if expert report is not timely served, court must dismiss such claim with prejudice upon defendant's motion),[4]

---

2. The Texas Rules of Civil Procedure require that a defendant challenging a plaintiff's capacity to sue raise the matter by verified pleading, if lack of capacity is not evident from the petition. See TEX.R. CIV. P. 93(1), (2); Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880, 885 (Tex. 2001); Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex.1996). The burden is on the defendant to challenge capacity to sue. Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 853 n. 7 (Tex.2005). The issues before us do not require us to determine whether appellants could challenge capacity by the exception and motion that they filed or whether they also had to raise the matter by verified plea.

3. Rather than filing an expert report, as required by the applicable law, Campbell mistakenly moved for entry of cost bond in lieu thereof, as was allowed by superseded law.

4. The version of section 74.351(a) applicable to this suit provided that the expert report had to be served 120 days from the date that

*amended by* Act of May 18, 2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (Vernon Supp.2006)). Campbell responded that Brown's claims were not properly before the trial court until March 20, 2006—when she amended her petition to assert those claims as Brown's guardian—because she had not had capacity to represent Brown in the lawsuit as his next friend and thus could not properly have asserted any claims on his behalf before then. Campbell concluded that the 120–day deadline to file the expert report for Brown should thus be calculated from the time that "Brown, through Guardian, was properly brought before the Court."

In contrast, appellants responded that the 120–day deadline should be calculated from the date of the filing of Brown's claims, regardless of whether Campbell had capacity to assert those claims at that time, because Campbell later cured her lack of capacity through the guardianship proceeding. Analogizing to case law on the statute of limitations—in which courts have held that claims filed without capacity, but before limitations runs, are considered timely even when capacity is not cured until after limitations runs—appellants argued that the curing of capacity did not restart the 120–day deadline, but required instead that the timeline for filing the report "relate back" to the date of the

claim's original filing. Appellants also argued that, even if the guardianship extended the time to file an expert report on Brown's behalf, the guardianship could have had no effect on Campbell's claims brought in her individual capacity.

After a hearing, the trial court rendered an order granting the motion to dismiss all of Campbell's individual claims against appellants with prejudice, but denying the motion to dismiss with respect to Brown's health-care-liability claims against appellants. Appellants appeal the portion of the ruling denying their motion to dismiss Brown's health-care-liability claims that Campbell asserted on his behalf.

### Standard of Review

■■■ We generally review rulings on a motion to dismiss under section 74.351 for abuse of discretion. *See Estate of Regis ex rel. McWashington v. Harris County Hosp. Dist.,* 208 S.W.3d 64, 67 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (holding same in appeal of ruling under section 74.351). The ruling under review in this case concerned a purely legal issue: whether former section 74.351(a) provides for the 120–day expert-report deadline to restart upon the curing of the claimant's representative's lack of capacity. We generally review questions of law like this *de novo. See Brown v. Villegas,* 202 S.W.3d 803, 805 (Tex.App.-San Antonio 2006, no

---

*the claim* was filed. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 864, 875, 884, 898–99, *amended by* Act of May 18, 2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem Code Ann. § 74.351(a) (Vernon Supp.2006)). The Legislature later amended section 74.351(a) to require that a claimant serve an expert report in a health-care-liability claim not later than the 120th day after the date that *the original petition* was filed. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current

version at Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (Vernon Supp.2006)). That amendment, however, does not apply to this lawsuit. *See* Act of May 18, 2005, 79th Leg., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590 (providing that 2005 amendment of section 74.352(a) applies only to causes of action that accrued on or after amendment's effective date of September 1, 2005). For simplicity's sake, we refer in the remainder of this opinion to the version of section 74.351(a) that applies to this lawsuit as "former section 74.351(a)."

pet.) ("We review the trial court's dismissal of a health care liability claim under an abuse of discretion standard; however, to the extent that the resolution of the issue presented requires an interpretation of [the statute] or a determination that [the statute] applies to a claim, we review under a *de novo* standard."). *But see Estate of Regis ex rel. McWashington*, 208 S.W.3d at 67 (describing standard of review of section–74.351(a) ruling as abuse of discretion, although appeal involved issue of statutory interpretation); *Mokkala v. Mead*, 178 S.W.3d 66, 70 (Tex.App.-Houston [14th Dist.] 2005, pet. granted) (same). Nonetheless, a trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Accordingly, the standard of review of this particular ruling is the same, regardless of whether it is described as abuse of discretion or *de novo*.

## The Effect of Curing Campbell's Incapacity to Sue on Brown's Behalf

In three issues, appellants argue that the trial court erred in implicitly determining that the 120–day deadline under former section 74.351(a) did not commence until Campbell cured her lack of capacity by being appointed Brown's guardian. Because the parties do not dispute that Campbell lacked legal capacity to sue as her adult son's next friend and that her appointment as his legal guardian cured that defect, we, too, assume without deciding that she lacked capacity to sue until she was appointed his guardian by the county court. *See also Saldarriaga v. Saldarriaga*, 121 S.W.3d 493, 499 (Tex.App.-Austin 2003, no pet.) (holding that next friend must be appointed for allegedly incompetent adult under procedural safeguards applicable to guardianships).

## A. Discussion

" '[A] party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy.' " *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex.2001) (emphasis in original) (quoting *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996)). A plaintiff's lack of capacity to bring suit on another's behalf does not deprive the trial court of subject-matter jurisdiction over the suit, and a challenge to the plaintiff's capacity may thus be waived. *Compare Coastal Liquids Transp., L.P.*, 46 S.W.3d at 884 (providing that challenge to plaintiff's lack of capacity can be waived), *and Safeway Stores, Inc. of Tex. v. Rutherford*, 130 Tex. 465, 469, 111 S.W.2d 688, 690 (1938) (concluding that judgment in favor of minor suing individually, rather than through next friend, would not have been void), *with Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985) (indicating that judgment is void when, among other things, it is apparent that court rendering judgment "had ... no jurisdiction of the subject matter"), *and Saudi v. Brieven*, 176 S.W.3d 108, 113 (Tex. App.-Houston [1st Dist.] 2004, pet. denied) ("Lack of subject-matter jurisdiction is fundamental error that may be recognized by the appellate court, sua sponte, or raised by a party, by appellate challenge, for the first time on appeal."); *see* Tex.R. Civ. P. 90, 93(1), (2).

"[M]inors and incompetents are considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities; such persons are required to appear in court through a legal guardian, a 'next friend,' or a guardian ad litem." *Lovato*, 171 S.W.3d at 849. A next friend is " '[o]ne who, without being regularly appointed guardian, acts for the benefit of' " one who is under a legal dis-

ability to act. *Latcholia v. Tex. Employers Ins. Ass'n,* 140 Tex. 231, 167 S.W.2d 164, 169 (1942) (op. on reh'g).

Former section 74.351(a), which is applicable to this cause, provides that a "claimant" asserting a health-care-liability claim must serve the required expert report not later than the 120th day after the date that the claim was filed. *See* former TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (then providing that date of claim's filing was triggering date; currently providing that date of petition's filing is triggering date). A claimant is defined as "a person ... seeking or who has sought recovery of damages in a health care liability claim." *Id.* at § 74.001(a)(2) (Vernon 2006). Appellants argue that, with the exception of Campbell's individual claims, which have been dismissed and are not at issue in this appeal, "[t]here has been one 'claim' filed by only one 'claimant' in this matter, and that claim was initially asserted in Plaintiff's Original Petition filed on November 4, 2005 [appts' br., p. 11]." We agree. The real party plaintiff in a lawsuit asserted by either a next friend or a guardian is the incompetent person. *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 519 (Tex.1984) (suit by next friend); *Rutherford,* 130 Tex. at 467, 111 S.W.2d at 689 (same); *Wimberly v. Parish,* 381 S.W.2d 135, 136 (Tex.Civ.App.-Beaumont 1964, writ ref'd n.r.e.) (guardianship). When Campbell asserted claims on behalf of Brown—whether mistakenly as his next friend or, later and correctly, as his actual guardian—Brown was the real party plaintiff. Thus, Brown has at all times been the true "claimant" under former section 74.351. *See Wheat v. Montgomery,* 560 S.W.2d 767, 768 (Tex.Civ.App.-El Paso 1977, no writ) (in dictum, indicating that change in representative's capacity from next friend to guardian was not change in plaintiff, but merely change in capacity of representative).

Nonetheless, Campbell asserts that because she lacked capacity to represent Brown before she was appointed his legal guardian, Brown could not have been a party plaintiff, and thus could not have been a "claimant" for purposes of former section 74.351, until she had actually obtained the capacity to represent him. That is, Campbell views Brown as having asserted his health-care-liability claim for the first time only after the person through whom he asserted that claim (Campbell) had obtained the actual capacity to represent him. Appellants respond by relying by analogy on the line of Texas Supreme Court authority that, when a petition alleging a representative capacity that is actually lacking is filed before the statute of limitations expires, and the capacity problem is cured after limitations passes (but no new claims are asserted), the plaintiff's post-limitations capacity cures her pre-limitations lack thereof. *See Lovato,* 171 S.W.3d at 851, 853 ("The estate commenced the suit before limitations expired; [Plaintiff] cured the defect in her capacity before the case was dismissed. Under those circumstances, the estate ... was ultimately represented by a person with capacity to pursue the claim on its behalf."); *accord Lorentz v. Dunn,* 171 S.W.3d 854, 856 (Tex.2005) (following *Lovato*).

We agree with appellants that *Lovato* and *Lorentz,* although not fully on point, support the conclusion that Campbell's expert report was untimely. If a claim for which the plaintiff lacks capacity to sue is deemed cured by the representative's later obtaining capacity, so that limitations runs from the date of the claim's first filing (rather than from the date of the cure), then the same should be true for a health-care-liability claim brought by one asserting, but actually lacking, capacity to sue: upon cure, it is as if the claim had originally been brought in the correct capacity—

*i.e.,* the corrected capacity "relates back" to the claim's original filing—so that the 120–day deadline began running from the date of the claim's filing, rather than from the date of the cure.

We recognize that the circumstances of *Lovato* and *Lorentz* differ from those present here in that, among other things, those courts were considering limitations, and the application of the relation-back doctrine in those cases benefited the plaintiffs. Nevertheless, the basic instruction of *Lovato* and *Lorentz* is that, if a plaintiff cures her capacity within a reasonable time, it is as if, from the very beginning of the suit, her capacity had never been lacking. That basic instruction supports our conclusion here. Moreover, it is well-settled both that the lack of the plaintiff's capacity to sue on behalf of another can be waived and that a judgment rendered for one whose plaintiff-representative lacked capacity is not void. *See, e.g., Coastal Liquids Transp., L.P.,* 46 S.W.3d at 884 (providing that challenge to plaintiff's lack of capacity can be waived); *cf. Rutherford,* 130 Tex. at 469, 111 S.W.2d at 690 (concluding that judgment in favor of minor suing individually, rather than through next friend, would not have been void). Accordingly, had appellants never objected to Campbell's lack of capacity to assert Brown's claims, and had Campbell never sought to cure that deficiency, any judgment rendered on those claims would have been valid despite her lack of capacity. There is also no question that, under those circumstances, former section 74.351(a)'s expert-report deadline would have been calculated from the date that Campbell filed Brown's claims-regardless of whether she had actual capacity to assert them when they were filed. Former section 74.351(a)'s expert-report deadline should not have a different starting date simply because Campbell eventually cured her lack of capacity.

■■■ Additionally, the purposes behind former section 74.351(a)'s adoption were, among other things, to remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and to give hard-and-fast deadlines for the serving of expert reports. *See Mokkala,* 178 S.W.3d at 74–75 (considering former section 74.351(a) and quoting from legislative record). If the expert-report deadline were allowed to restart at any time that capacity is cured—even though more than 120 days had elapsed from the time that the claimant's representative had purported first to assert the claim-these purposes of former section 74.351(a) would be thwarted because the expert-report deadline could be greatly extended. *Cf. id.* at 76 ("Allowing a plaintiff to restart the period for serving an expert report by simply nonsuiting her health care liability claim and refiling that same claim, could effectively expand the 120–day period to well over two years. Such a procedure is inconsistent with the policies, goals, and statutory provisions [behind former section 74.351(a)'s adoption] set forth above.") (citations omitted). Such an extension would, in effect, also violate the spirit (if not the letter) of former section 74.351 itself, which provides only limited means to extend the time for filing the expert report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a), (c) (Vernon Supp.2006) (allowing for extension of 120–day deadline by written agreement of affected parties; further providing that, if expert report is deemed not to have been timely served because its elements were deficient, court has discretion to allow claimant 30 days to cure deficiency).

Campbell further argues that the cases upon which appellants rely are distinguishable because, in them, the party lacking capacity originally alleged that he had the same type of capacity that he eventually obtained. For example, Campbell notes

that, in both *Lovato* and *Lorentz,* the plaintiffs originally alleged that they were the estate administrators when they were not, but later actually became the estates' administrators. *See Lovato,* 171 S.W.3d at 847, 853 ("In any event, it would be pointless to require that the plaintiff file an 'amended' pleading containing the same allegations of capacity as were stated in her original petition."); *Lorentz,* 171 S.W.3d at 855. Here, in contrast, Campbell notes that she alleged originally that she was a *next friend,* but she later cured that defect by becoming a *guardian.*

"[Texas Rule of Civil Procedure] 44 gives a next friend the same rights as a guardian, which necessarily include the ability to make any decision with respect to a lawsuit on behalf of the ward...." *Saldarriaga,* 121 S.W.3d at 499; *see* Tex.R. Civ. P. 44(1) (so providing). Moreover, as we have stated above, the real party plaintiff in a lawsuit asserted by either a next friend or a guardian is the incompetent person. *See Gracia,* 667 S.W.2d at 519; *Rutherford,* 130 Tex. at 467, 111 S.W.2d at 689; *Wimberly,* 381 S.W.2d at 136. Finally, whether one wishes to be appointed the next friend or the guardian of an adult who has not yet been adjudged incompetent, one must follow the same procedures, *i.e.,* those for guardianships. *See Saldarriaga,* 121 S.W.3d at 498–99. For these reasons, it is immaterial that Campbell represented herself first as next friend of Brown and then cured that deficiency through a legal appointment under the title of guardian, rather than under the title of next friend: whether she had filed the suit as next friend or as guardian, Campbell would have had the same powers and would have attempted to represent the same person on the same claims. Accordingly, we decline to distinguish the analogous limitations authority on which we have relied for the reason that Campbell argues here.

## B. Resolution

Appellant asks us to determine whether Brown's claims styled as something other than health-care-liability claims were in fact health-care-liability claims, so that we may order all of those claims dismissed for Campbell's failure timely to file the expert report. Campbell opposes our doing so because the issue of whether other-named claims were actually health-care-liability claims was not litigated before the trial court.

Appellants' motion to dismiss and their related reply implicitly treated all of Campbell's and Brown's claims as being health-care-liability claims, praying that the court "dismiss[ ] this matter" and "this case" against them. In her response to the motion to dismiss, Campbell referred only to "[t]he medical malpractice claims asserted in this matter." No one briefed to the trial court whether all or only some of Brown's claims in this suit were health-care-liability claims for which former section 74.531(a) required that an expert report be served. The trial court's ruling with respect to Brown's claims does not reveal, implicitly or expressly, whether the court considered all of those claims to be subject to former section 74.351(a). We decline to review a matter that was not presented to the trial court and on which we cannot determine that the trial court ruled. Accordingly, on remand, the trial court may determine which of Brown's claims were "health care liability claims" that must be dismissed with prejudice for Campbell's failure timely to serve an expert report.

## Conclusion

We reverse the order of the trial court to the extent that it denied the motion to dismiss the health-care-liability claims against appellants brought by Campbell on behalf of Brown and remand the cause for

further proceedings consistent with this opinion.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

I respectfully dissent. I would affirm the trial court's denial of appellants' motion to dismiss appellees' health-care-liability claim for failure to timely file an expert report. I agree with the trial court that the 120–day expert report deadline was tolled until Campbell was appointed Brown's guardian.

On November 4, 2005, Campbell filed her original petition, alleging that she sued appellants "individually and as next friend of ... Brown, a nineteen-year old suffering from paranoid schizophrenia." On November 30, 2005, appellants filed special exceptions alleging that Campbell had not been appointed Brown's legal guardian and, therefore, lacked the capacity to sue on his behalf. The next day, December 1, 2005, appellants filed an unverified "Motion to Determine the Legal Capacity of Cindy Campbell," requesting that the trial court order Campbell "to produce evidence of her legal capacity to bring this suit ..." within 10 days or, alternatively, that Campbell's next-friend claims "be dismissed for want of legal capacity to sue." The trial court did not immediately rule on appellants' motion or special exceptions. While appellants' motion and special exceptions were pending, Campbell sought appointment as Brown's legal guardian.

Campbell filed her first amended petition on January 13, 2006, alleging that she brought suit individually and as next friend of Brown, "an incapacitated person," under Texas Rule of Civil Procedure 44. *See* TEX.R. CIV. P. 44 ("Minors, lunatics, idiots, or persons non compos mentis who have no legal guardian may sue and be represented by 'next friend' under the following rules...."). She also alleged that her son

was a "mentally incapacitated adult." Campbell realleged the same matters relating to Brown's claims in her second amended petition, which she filed on February 15, 2006. Campbell had not cured her lack of capacity to sue on Brown's behalf when she filed these petitions.

On March 2, 2006, the Madison County Court appointed Campbell as Brown's legal guardian. On March 6, 2006, appellants moved to dismiss Brown's and Campbell's claims against them for Campbell's failure to serve an expert report on them within 120 days of the claim's filing. On March 20, 2006, Campbell moved the trial court to have the guardianship recognized. She also simultaneously filed a third amended petition, alleging that her claims were asserted individually and on behalf of Brown—both as his guardian and as his next friend. On April 4, 2006, the trial court signed an agreed order recognizing Campbell's guardianship of Brown.

As the majority states, "[M]inors and incompetents are considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities; such persons are required to appear in court through a legal guardian, a 'next friend,' or a guardian ad litem." *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex.2005). " '[A] party has capacity when it has the *legal authority to act*, regardless of whether it has a justiciable interest in the controversy.' " *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex.2001) (quoting *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996)) (emphasis added).

Here, Campbell lacked legal capacity to sue as her adult son's next friend when she filed her first and second amended petitions. That defect was cured by Campbell's appointment as Brown's legal guard-

ian. *Cf. Lorentz v. Dunn,* 171 S.W.3d 854, 856 (Tex.2005) (when person is appointed administrator of estate she acquires capacity to assert survival claim on estate's behalf); *Lovato,* 171 S.W.3d at 851 (Lovato acquired capacity to sue when she was appointed administrator of estate).

Under *Lovato* and *Lorentz,* Campbell's appointment relates back to the filing of Brown's claims to prevent limitations from running on the claims while no one was in a position of authority to act on his behalf. *See Lovato,* 171 S.W.3d at 851, 853 ("The estate commenced the suit before limitations expired; [Plaintiff] Lovato cured the defect in her capacity before the case was dismissed. Under those circumstances, the estate ... was ultimately represented by a person with capacity to pursue the claim on its behalf."); *accord Lorentz,* 171 S.W.3d at 856 (following *Lovato* ).

It does not follow from *Lovato* and *Lorentz,* however, that the deadline for filing an expert report includes the time it takes to cure a lack of capacity to sue that a defendant has brought to the attention of the trial court. If that were so, all essential deadlines could run while no one had the actual capacity to act on them—just as appellants allege and the majority agrees happened here. This would reintroduce the identical problem *Lorentz* and *Lovato* cured: the problem of deadlines running on claims *no one is in a position to make. See Lovato,* 171 S.W.3d at 851 ("We must ... consider whether Lovato's claims are barred because she did not cure the defect in her representative capacity until after limitations had expired."); *Lorentz,* 171 S.W.3d at 856 ("Lorentz's late-acquired capacity cured her pre-limitations lack thereof, and the trial court therefore erred in dismissing the case.").

*Lovato* and *Lorentz* hold that lack of capacity can be cured even after deadlines have run. *See Lovato,* 171 S.W.3d at 852–53; *Lorentz,* 171 S.W.3d at 856. They do *not* hold that because the plaintiff's capacity to sue relates back to the date of filing of a claim and cures the failure to meet that deadline it also relates back to all interim dates and *creates* opportunities for dismissal for failure to meet all the other deadlines that elapsed while the plaintiff was in the process of curing her lack of capacity at a defendant's insistence. Rather, as the supreme court stated in *Lovato,* in a case brought by a claimant who lacks capacity to sue, *"[t]he burden is on the defendant to challenge capacity via verified plea, and the trial court should abate the case and give the plaintiff a reasonable time to cure any defect." Lovato,* 171 S.W.3d at 853, n. 7 (emphasis added); *see also* Tex.R. Civ. P. 93(1)-(2); *Coakley v. Reising,* 436 S.W.2d 315, 317 (Tex.1968); *Shiffers v. Estate of Ward,* 762 S.W.2d 753, 755 (Tex.App.-Fort Worth 1988, writ denied).

The trial court did just as *Lovato* directs. It carried appellants' motion to dismiss with the case until Campbell had been given a reasonable opportunity to cure the defect in capacity raised by defendants and then denied the motion to dismiss. It thus implicitly tolled the running of deadlines on Brown's claims during that time. Rather than holding Campbell to deadlines that all parties acknowledge she lacked the capacity to meet at the time they elapsed, I would hold that those deadlines were tolled by the trial court's decision to withhold its ruling on appellants' motion to dismiss for the reasonable time it took Campbell to cure her lack of capacity.

Even though the majority recognizes that the trial court's order denying appellants' motion to dismiss effectively tolled those deadlines that ran during the time appellant was attempting to cure her lack of capacity to sue, the majority nevertheless requires an express ruling by the trial

court in the record in response to a defendant's special exceptions and/or motion to dismiss for lack of capacity, *in advance of its final ruling,* expressly ordering the plaintiff to cure her lack of capacity, abating the case, and tolling all other deadlines while the lack of capacity is cured. And the majority refuses to recognize the implicit tolling effect of a trial court's carrying a motion to dismiss for lack of capacity until the lack of capacity is cured.

I can find nothing in the Texas Rules of Civil Procedure or Texas case law to support the strict bifurcated procedure required by the majority to toll the running of deadlines while a defect in capacity raised by a defendant is cured. Rather, in my view, the majority's reading of the Texas Rules of Civil Procedure serves neither the letter nor the spirit of the law. It prohibits the trial court from implicitly tolling deadlines while a defect in capacity to sue is addressed by delaying its ruling on a motion to dismiss raising the defect in capacity to allow a reasonable time for the plaintiff to cure the defect. Effectively, the majority's opinion undoes *Lovato* and *Lorentz* and places in the hands of defendants the arbitrary power to enforce deadlines running against a plaintiff that all parties and the court acknowledge she lacks the capacity to meet.

Because the majority's opinion encourages the resolution of legal suits on a strict reading of rules of procedure subject to arbitrary and capricious enforcement at the expense of "a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law," I respectfully dissent. TEX.R. CIV. P. 1. I would hold that, under *Lovato* and *Lorentz,* deadlines running on a claim brought by a party whose capacity to sue is challenged are implicitly tolled by the trial court's decision to delay ruling on a motion to dismiss pending a reasonable attempt by the plaintiff to cure the defect, and they begin to run from the date the defect is cured. *See Lorentz,* 171 S.W.3d at 856; *Lovato,* 171 S.W.3d at 851.

I would affirm the trial court's order denying the dismissal of Brown's claims.