Opinion issued December 19, 2008
 


    










In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00199-CV
____________

RAYMON POLAND, INDIVIDUALLY AND AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF JESSIE POLAND, ROBERT
MARTIN, and FRANK MARTIN, Appellants

V.

DAVID OTT, Appellee




On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2006-38894(c)



 
O P I N I O N
          Appellants, Raymon Poland, individually and as independent administrator of
the estate of Jessie Poland, Robert Martin, and Frank Martin (“the Poland parties”),
timely moved for rehearing to the panel and for en banc reconsideration to the Court. 
On March 5, 2008, the Court denied the Poland parties’ rehearing motion, but their
motion for en banc reconsideration remained pending, thus maintaining our plenary
power over the appeal. See Tex. R. App. P. 19.1; see also City of San Antonio v.
Hartman, 201 S.W.3d 667, 670–71 (Tex. 2006) (in holding that motion for en banc
reconsideration extends time in which to file petition for review, noting that rule 19.1
treats motions for en banc reconsideration as subset of rehearing motions for purpose
of determining court of appeals’ plenary power). During that plenary power, we now
sua sponte withdraw our opinion and judgment issued January 31, 2008 and issue this
opinion and judgment in their stead. See Univ. of Tex. Health Sci. Ctr. at Houston v.
Gutierrez, 237 S.W.3d 869, 870 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)
(citing rule 19.1 as authority for withdrawing opinion and judgment sua sponte within
Court’s plenary power and reissuing new opinion and judgment). Nonetheless, we
do not change the disposition of the appeal. The Poland parties’ motion for en banc
reconsideration is rendered moot by our withdrawing and reissuing our opinion and
judgment.


 Cf. Brookshire Bros., Inc. v. Smith, 176 S.W.3d 30, 41 n.4 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh’g) (noting that motion for
en banc reconsideration becomes moot when motion for rehearing is granted and new
opinion and judgment issue).
          The Poland parties appeal from a judgment dismissing their health-care-liability and related claims against appellee, Dr. David Ott. We determine whether
the trial court erred in granting Dr. Ott’s motion to dismiss the claims against him for
the Poland parties’ failure timely to serve an expert report on Dr. Ott. We affirm.
Background
          The factual recitations come from the Poland parties’ petitions. Appellant
Raymon Poland was the husband of Jessie Poland; the remaining appellants were his
natural children. In August 2003, Jessie Poland, under the care of Dr. James
Willerson (an appellee in a related appeal) and Dr. Ott, was hospitalized at St. Luke’s
Episcopal Hospital and the Texas Heart Institute (both appellees in another related
appeal) for an elective surgical procedure to repair her heart’s mitral valve. Dr. Alina
Grigore, who was employed by Dr. Arthur S. Keats & Associates (both of whom are
appellees in another related appeal), was the anesthesiologist for the surgical
procedure. The Poland parties alleged that, at the time of surgery, Jessie Poland’s
blood contained a level of Coumadin that the health-care providers should have
known rendered her blood fully anti-coagulated and, thus, rendered surgery
dangerous. The surgery was nonetheless performed; Jessie Poland bled internally;
and she died several days later of multi-system organ failure.
          The Poland parties sued, among other defendants, St. Luke’s Episcopal
Hospital, the Texas Heart Institute, the University of Texas Health Science Center at
Houston, Arthur S. Keats & Associates, and Drs. Ott, Grigore, and Willerson on
October 24, 2005 for Jessie Poland’s wrongful death, for her pain and suffering and
medical costs before her death, and for her burial expenses. By the time of the trial
court’s complained-of ruling, the Poland parties had amended their petition to allege
the following causes of action or theories of recovery against all defendants,
including Dr. Ott: (1) negligence, (2) gross negligence, (3) actual and constructive
fraud, (4) intentional infliction of emotional distress, (5) assault and battery, (6)
intentional and negligent abandonment, (7) breach of fiduciary duties, (8) “negligent
breach of fiduciary duties,” (9) malpractice, (10) “lack of proper informed consent,”
(11) “tampering with official medical records,” (12) “forgery,” (13) violations of the
Texas Deceptive Trade Practices–Consumer Protection Act (“DTPA”),


 and (14)
conspiracy among all defendants. This “live” petition also added allegations that the
defendants had altered Jessie Poland’s medical records and forged Raymon Poland’s
signature on unspecified hospital documents. They sought actual and exemplary
damages.
          On June 20, 2006, Dr. Ott moved, under Texas Civil Practice and Remedies
Code section 74.351(b), to dismiss the Poland parties’ health-care-liability claims
against him for failure to serve an expert report upon him or his attorney within 120
days of the filing of those claims.


 See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(b) (Vernon Supp. 2008) (providing that trial court must dismiss health-care-liability claim against defendant if claimant fails to serve expert’s report and
curriculum vitae on that defendant within period specified by section 74.351(a)); Act
of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875
(providing that claimant must serve each defendant against whom health-care-liability
claim is asserted with expert’s report and curriculum vitae not later than 120 days of
claim’s filing) [hereinafter, “former section 74.351(a)”],


 amended by Act of May 18,
2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version
at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008)). The
motion alleged that the Poland parties had served the report of their expert, Dr.
Dennis Moritz, on Dr. Ott’s attorney 123 days after their health-care-liability claims
had been filed against him.



          The Poland parties did not deny that they had served Dr. Moritz’s May 2, 2005
report on Dr. Ott’s counsel 123 days after their claims had been filed against Dr. Ott,
but in their response, they alleged that they had “served” that same report on Gary
McLeod, a representative of Dr. Ott’s professional liability carrier (APMC Insurance
Services), whom they described in their response as Dr. Ott’s “designated
representative” for receipt of the report, on July 29, 2005—nearly three months
before suit was filed.


 The Poland parties produced evidence that they alleged
supported their response’s allegation. For example, they attached a letter, dated July
13, 2005, from McLeod to the Poland parties’ attorneys, which in pertinent part read:
Your letter of June 30, 2005 to David Alan Ott, M.D. has been referred
to us for response, as we are his professional liability carrier. We will
be investigating this case on behalf of Dr. Ott.
 
. . .
 
I also request that you provide me with your medical expert’s specific
criticisms of our member’s care so that we might share those concerns
with David Alan Ott, M.D.

They also attached their attorney’s July 29, 2005 response to McLeod’s letter:
Additionally, you will find enclosed the information that you requested
regarding the opinion of our expert witness.
 
. . .
 
I will also fax you some additional information shortly.

Attached to the Poland parties’ attorney’s July 29 letter was the unsigned expert
report of Dr. Moritz and his curriculum vitae (“CV”). Finally, the Poland parties
attached the affidavit of their counsel, who averred in pertinent part as follows:
I received notice from APMC Insurance Services on behalf of Dr. Ott. 
They [sic] requested the “medical expert’s specific criticisms of our
member’s care so that we might share those concerns with David Alan
Ott, M.D.” . . . . I then replied . . . by sending Mr. Gary McLeod the
Expert Report with Resume. I discussed wanting to look at possible
settlement of this claim . . . . Mr. McLeod stated that he would have to
send for the medical records from the hospital, to which I returned to
him the medical authorization he had previously sent me, along with a
copy of the Expert Report with Resume. . . . The Defendants have had
the Expert report with Resume since May 2005.

(Emphasis added.)

          The hearing on Dr. Ott’s motion to dismiss and his motion to strike the live
petition occurred on July 14, 2006. Other defendants’ motions to dismiss, objections
to the expert report, and objections to the live petition were heard simultaneously. 
No additional evidence was presented at the hearing, but the following discussion
between the trial court and Dr. Ott’s attorney transpired:
Court:Who got the [expert] report beforehand [before
suit’s filing]?
 
. . .
 
Dr. Ott’s attorney:Dr. Ott received it through—he was served with it
through his carrier pre suit notification. We, as the 
attorneys did not—we did not have communications
with the plaintiffs before the lawsuit was filed.
 
. . .

 
Court:. . . Heart Institute and St. Luke’s gets [sic] pre suit
report, [Dr.] Grigore gets no report before or after. 
. . . Willerson, gets—is not a part of this lawsuit. 
[Dr.] Ott gets report pre suit, directly from his
insurance carrier. Attorneys never—
 
Dr. Ott’s attorney:The insurance carrier, yes. The insurance carrier
gets them.
          On October 30, 2006, the trial court rendered an interlocutory order that,
among doing other things, dismissed the claims against Dr. Ott with prejudice:
On July 14, 2006 . . . CAME TO BE HEARD all parties, by and through
counsel, . . . Dr. David Ott’s Motion to Dismiss and Dr. David Ott’s
Motion to Strike & Objections to Plaintiff’s [sic] Third Amended
Petition . . . . The Court, having considered such Motions and
Objections, having reviewed the file herein, and heard the argument of
counsel, makes the following FINDINGS OF FACTS and ORDERS:
 
1.Plaintiffs . . . filed their Original Petition on October 24,
2005. The 120-day deadline by which Plaintiffs were
required to serve their expert reports pursuant to Section
74.351 of the Tex. Civ. Prac. & Rem. Code was February
21, 2006. The earliest date that Plaintiffs served an expert
report to any Defendant, after the filing of their lawsuit,
was on February 24, 2006.
 
. . .
 
5.With respect to Defendant Dr. David Ott, Plaintiffs mailed
Defendant Dr. David Ott’s insurance agent with an
unsigned expert report from Dennis Moritz, M.D. on July
29, 2005. Plaintiffs provided no evidence that Dr. Ott or
his counsel received said unsigned expert report. The suit
was filed by Plaintiffs against Dr. Ott on October 24, 2005. 
The deadline to serve the expert report was February 21,
2006. Plaintiffs served upon Dr. Ott’s counsel the
unsigned expert report on February 24, 2006, three days
after the 120 day deadline, pursuant to Section 74.351 of
the Tex. Civ. Prac. & Rem. Code. It is therefore
ORDERED that Defendant Dr. David Ott’s Motion to
Dismiss and Motion to Strike and Objections to Plaintiff’s
[sic] Third Amended Petition [be] GRANTED, and all
claims against Dr. David Ott [be] DISMISSED with
prejudice.
 
. . .
 
7.It is further ORDERED that pursuant to Section 74.351 of
the Tex. Civ. Prac. & Rem. Code that . . . Dr. David Ott
[be] awarded attorney’s fees in the amount of $14,893.00. 
The collection of these attorney’s fees is stayed pending
outcome of any interlocutory appeal.

This same order also (1) denied St. Luke’s Episcopal Hospital and the Texas Heart
Institute’s joint motion to dismiss under Texas Civil Practice and Remedies Code
section 74.351 and (2) granted Dr. Grigore and Arthur S. Keats & Associates’ motion
to dismiss under section 74.351(b). Finally, the trial court signed a separate
interlocutory order that granted Dr. Willerson’s motion to dismiss based upon Texas
Civil Practice and Remedies Code section 101.106. See Tex. Civ. Prac. & Rem.
Code Ann. § 101.106 (Vernon 2005).
          The Poland parties appealed the adverse rulings dismissing all of their claims
against Drs. Ott, Willerson, and Grigore and Arthur S. Keats & Associates, and St.
Luke’s Episcopal Hospital and the Texas Heart Institute appealed the denial of their
motion to dismiss—all under the same appellate cause number. Although the
interlocutory order appealed by St. Luke’s Episcopal Hospital and the Texas Heart
Institute was permitted by statute, this was not true of every appealed order. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a) (Vernon 1997 & Supp. 2008). On
December 18, 2006, upon the parties’ motion, this Court abated the appeal and
remanded the cause for the trial court—upon various parties’ motions, filed in the
trial court after appeal, to sever the interlocutory orders rendered in favor of Dr. Ott,
of Dr. Willerson, and of Dr. Grigore and Dr. Arthur S. Keats & Associates—to render
final and appealable those interlocutory rulings that had not been appealable on an
interlocutory basis. Upon remand, the trial court severed the rulings against the
specified defendants from the underlying cause, rendering a final judgment in the
newly severed cause numbers involving Dr. Ott, Dr. Willerson, and Dr. Grigore and
Dr. Arthur S. Keats & Associates. On March 15, 2007, this Court reinstated the
appeal, assigning different appellate cause numbers to the appeal of what had by then
become four separate rulings in four separate trial-court cause numbers. This opinion
and judgment concern the Poland parties’ appeal of the dismissal order rendered in
favor of Dr. Ott.
The Parties’ Arguments
          In one issue, the Poland parties argue that the trial court erred in granting Dr.
Ott’s dismissal motion and dismissing their claims against him with prejudice because
they “served” their expert’s report and CV on McLeod, Dr. Ott’s “designated
representative and duly authorized agent” for service of the report, about five months
before they filed suit against Dr. Ott, rendering the report timely filed under former
section 74.351(a). They argue that service in this fashion was “equivalent to serving”
Dr. Ott himself and thus satisfied “the spirit of [former] section 74.351(a).” This
argument is grounded in the implicit understanding that former section 74.351(a) can
be satisfied by provision of an expert’s report to a physician or health-care provider
before a claim has been asserted against that person or entity in a lawsuit (here,
presuit, because Dr. Ott was made a defendant by the original petition), so that the
same report need not be served again within 120 days of the claim’s filing against that
defendant. Dr. Ott disputes (1) that McLeod was Dr. Ott’s agent for purposes of
service of the expert report, as a matter of fact; (2) that former section 74.351(a)
allows for service on any person other than the defendant or his attorney, as a matter
of law; and (3) that provision of an expert report before a claim is filed in court
against the physician or health-care provider complies with former section 74.351(a).
The Standard of Review
          “We generally review rulings on a motion to dismiss under section 74.351(b)
for abuse of discretion.” Gutierrez, 237 S.W.3d at 871. Some of the issues that we
consider in this appeal involve questions of law, to which a de novo standard of
review generally applies. Id. “Nonetheless, a trial court has no discretion in
determining what the law is, which law governs, or how to apply the law.” Id. at 871
n.1. Accordingly, to the extent that we consider questions of law, the standard of
review is the same “regardless of whether it is described as abuse of discretion or de
novo.” Id.; accord Intracare Hosp. N. v. Campbell, 222 S.W.3d 790, 795 (Tex.
App.—Houston [1st Dist.] 2007, no pet.). 
The Applicable Law
          Former section 74.351(a) provides as follows concerning service of the expert
report and CV:
          § 74.351. Expert Report
(a)In a health care liability claim, a claimant shall, not later than the
120th day after the date the claim was filed, serve on each party or the
party’s attorney one or more expert reports, with a curriculum vitae of
each expert listed in the report for each physician or health care provider
against whom a liability claim is asserted. The date for serving the
report may be extended by written agreement of the affected parties. 
Each defendant physician or health care provider whose conduct is
implicated in a report must file and serve any objection to the
sufficiency of the report not later than the 21st day after the date it was
served, failing which all objections are waived.

See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847,
875, amended by Act of May 18, 2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws
1590, 1590 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)
(Vernon Supp. 2008)). The section continues:
 
(b)If, as to a defendant physician or health care provider, an expert
report has not been served within the period specified by Subsection (a),
the court, on the motion of the affected physician or health care
provider, shall, subject to Subsection (c), enter an order that:
 
(1)awards to the affected physician or health care provider
reasonable attorney’s fees and costs of court incurred by the
physician or health care provider; and
 
(2)dismisses the claim with respect to the physician or health
care provider, with prejudice to the refiling of the claim.
    
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).
          “Statutes must be construed as written, and legislative intent determined, if
possible, from their express terms.” Gutierrez, 237 S.W.3d at 873. “Chapter 74, in
its entirety, rather than provisions in isolation, must be considered, and meaning
given to each provision consistent with all others.” Id. “Courts presume that the
entire statute is to be effective and a just and reasonable result is intended.” Id. 
“Even if a statute is unambiguous, courts may consider the statute’s objective;
circumstances of its enactment; its legislative history; . . . [and] consequences of a
particular construction . . . . Id. “All words used and omitted are presumed used and
omitted purposefully.” Id. 
Provision of the Expert Report Before a Claim’s Filing
          We need not determine whether former section 74.351(a) allows designated
representatives of a defendant or his attorney to receive service of an expert’s report:
even if the answer to this question is “yes,” we must nonetheless affirm because
provision of an expert report before a health-care-liability claim is filed in court
against the physician or health-care provider does not meet former section 74.351(a)’s
service requirements. 
A.      What the Term “Serve” in Former Section 74.351(a) Means
          Although former section 74.351(a) does not define the term “serve,” this Court
has recently held that “the Legislature intended for [health-care-liability] claimants
to comply with rule 21a [of the Texas Rules of Civil Procedure] to fulfill the
requirements of section 74.351(a).” Gutierrez, 237 S.W.3d at 872. In Gutierrez, we
relied on Herrera v. Seton Northwest Hospital


 for the latter’s conclusion that the
term “serve” as used in former section 74.351(a) has the same meaning as it does in
rule 21a. See Gutierrez, 237 S.W.3d at 872. As the Herrera court explained:
The distinction between filing and serving an expert report and
curriculum vitae is amplified for claims governed by chapter 74 because
[former Texas Revised Civil Statute] article 4590i claimants were
merely required to “furnish” expert reports, but chapter 74 claimants
must “serve” them.
 
“Serve” is not defined in section 74.351(a). The code
construction act provides guidance, however. It states that “words and
phrases that have acquired a technical or particular meaning, whether by
legislative definition or otherwise, shall be construed accordingly.” 
“Serve” and “served” have distinct and familiar legal meanings under
our rules of civil procedure. See Tex. R. Civ. P. 21a. The rules of civil
procedure govern all actions of a civil nature in Texas courts unless a
specific exception applies. We agree with our sister court’s conclusion
that, given the applicability of the rules of civil procedure to health care
liability claims and the use of “serve” and “served” in the statute, the
legislature intended for claimants to comply with Texas Rule of Civil
Procedure 21a to fulfill the requirements of section 74.351(a).
 
This construction comports with the legislature’s change of the
word “furnish” in [former article 4590i,] section 13.01(d) to “serve” in
section 74.351(a). We presume that the legislature enacted the statutory
change with knowledge of existing law. Therefore, we may also
presume its awareness of the meaning attached to the word “serve” in
rule 21a.

Herrera, 212 S.W.3d 452, 458–59 (Tex. App.—Austin 2006, no pet.) (footnotes and
most citations omitted, emphasis added by underlining). Four courts of
appeals—including this Court twice since Gutierrez—have concluded that the term
“serve” in former and current section 74.351(a) refers to rule 21a.


 Indeed, this is the
meaning that the Poland parties argue that we adopt: in citing rule 21a, they argue,
“This court should conclude that the legislature intended the term ‘serve’ [in former
section 74.351(a)] to have the same meaning that it carries in the rules of civil
procedure.”
B.      Why Presuit Provision of an Expert Report Does Not Satisfy the
Requirement in Former Section 74.351(a) to “Serve” the Report

          The plain language of former section 74.351(a) and rule 21a, which it
implicitly incorporates by use of the term “serve,” simply does not contemplate
“service” of the expert’s report and CV on a physician or health-care provider until
after a claim has been filed in court against that person or entity. We reach this
conclusion despite the fact that, as the Poland parties note, the section requires
service “not later than” 120 days after a claim is filed, rather than requiring service
within 120 days after the claim is filed. (Emphasis added.) Act of June 2, 2003, 78th
Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, amended by Act of May
18, 2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590.
          1.       First Reason: The Language of Chapter 74
          First, former section 74.351(a) speaks in terms of service on a party or the
party’s attorney, and it uses the term “defendant” for the physicians and health-care
providers whom the expert report implicates. See id. One is not a “party” or a
“defendant” until a claim is asserted against one in a suit. That the Legislature knew
what it was saying when it employed the terms “party” and “defendant” in former
section 74.351(a) can be seen from other provisions of chapter 74. For example,
section 74.051, concerning notice of a health-care-liability claims, provides:
§ 74.051. Notice
 
(a)Any person or his authorized agent asserting a health care liability
claim shall give written notice of such claim by certified mail, return
receipt requested, to each physician or health care provider against
whom such claim is being made at least 60 days before the filing of a
suit in any court of this state based upon a health care liability claim. 
. . .
 
(b)In such pleadings as are subsequently filed in any court, each
party shall state that it has fully complied with the provisions of this
section . . . and shall provide such evidence thereof as the judge of the
court may require to determine if the provisions of this chapter have
been met.
 
(c)Notice given as provided in this chapter shall toll the applicable
statute of limitations to and including a period of 75 days following the
giving of the notice, and this tolling shall apply to all parties and
potential parties.
Tex. Civ. Prac. & Rem. Code Ann. § 74.051(a)–(c) (Vernon 2005) (emphasis
added). Section 74.051(a)’s notice requirements necessarily apply before a health-care-liability claim is asserted in a suit (“Any person . . . asserting a . . . claim . . .
shall give written notice . . . at least 60 days before the filing of a suit in any court
. . . .”). Thus, when the Legislature drafted section 74.051(a), it (1) used neither
“party” nor “defendant,” but instead spoke only of persons, claimants, physicians, and
health-care providers; (2) spoke of claims that “are being made,” rather than of claims
that are “filed”; and (3) provided that written notice be “give[n],” rather than that it
be “served.” See id. (emphasis added). In contrast, section 74.051(b), which
necessarily establishes requirements applying only after court claims have been filed
(“In such pleadings as are subsequently filed in any court, each party shall . . . .”), the
Legislature employed the term “party.” See id. § 74.051(b). And throughout chapter
74, the Legislature employs the terms “party,” “plaintiff,” and “defendant” only in
those sections that clearly concern actions, events, or requirements that necessarily
follow the filing of a health-care-liability claim in court.


 
          In sum, when the Legislature intended that chapter 74’s requirements would
or could occur before the filing of a claim in court, it did not employ terms like
“party” or “defendant”; in contrast, only those sections of chapter 74 that necessarily
concern actions, events, or requirements occurring after the filing of a court claim
employ these terms. Therefore, the use of the terms “party” and “defendant” in
former section 74.351(a) indicates that the Legislature intended for this section’s
service requirements to apply only after the assertion of a claim in court. See
Gutierrez, 237 S.W.3d at 873 (“Chapter 74, in its entirety, rather than provisions in
isolation, must be considered, and meaning given to each provision consistent with
all others.”).
          2.       Second Reason: the Procedure for the Defendant’s Objection
          Second, by its plain language, former section 74.351(a) ties the deadline for the
physician or health-care provider’s filing and serving an objection to the expert report
to the date of service of the report. See Act of June 2, 2003, 78th Leg., R.S., ch. 204,
§ 10.01, 2003 Tex. Gen. Laws 847, 875 (emphasis added), amended by Act of May
18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current
version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)). “Each defendant
physician or health care provider whose conduct is implicated in a report must file
and serve any objection to the sufficiency of the report not later than the 21st day
after the date it was served, failing which all objections are waived.” Id. (emphasis
added). There is no proceeding in which to “file” the objection until a claim is
asserted in court and the physician or health-care provider has become an actual
defendant (which also explains why the section uses the term “defendant” to describe
the physician or health-care provider). A good illustration is a case like this one, in
which the health-care-liability claimants purport to have provided the physician with
the expert report more than 21 days before the filing of a court claim against him. 
The result of the Poland parties’ interpretation in this case is that Dr. Ott could never
have timely filed an objection to the expert report with the court because the 21-day
deadline to do so would have expired before a proceeding existed in which that
objection could have been filed. In sum, the 21-day deadline for a defendant’s
objections makes no sense unless a court claim has already been filed against the
defendant. We cannot presume that the Legislature intended the nonsensical result
that could occur under the Poland parties’ interpretation. See Gutierrez, 237 S.W.3d
at 873 (“Courts presume that the entire statute is to be effective and a . . . reasonable
result is intended.”). 
          3.       Third Reason: the Language of Rule 21a and Related Rule 21

          Third, the plain language of rule 21a, which former section 74.351(a) implicitly
incorporates through the use of the term “serve,” generally concerns postsuit notice. 
Rule 21a provides (1) that “[e]very notice required by these rules, and every pleading,
plea, motion, or other form or request to be served under Rule 21, other than the
citation . . . may be served” in one of four ways upon “the party” or “the party’s duly
authorized agent or attorney of record”; (2) that one of those four methods is any
manner “as the court . . . may direct”; (3) that “[n]otice may be served by a party to
the suit” or “an attorney of record,” among others; and (4) that “[t]he party or attorney
of record shall certify to the court compliance with this rule in writing over signature
and on the filed instrument.” Tex. R. Civ. P. 21a. Texas Rule of Civil Procedure 21,
to which rule 21a’s service provisions refer, is entitled “Filing and Serving Pleadings
and Motions” and concerns “[e]very pleading, plea, motion or application to the
court”; the rule also employs language clearly indicating its application to pending
suits. Tex. R. Civ. P. 21. The fact that former section 74.351(a) implicitly
incorporates by reference rule 21a—which concerns service of pleadings, pleas,
motions, and requests in the context of lawsuits—further indicates the Legislature’s
intent that former section 74.351(a)’s service requirements apply after the filing of
a health-care-liability claim in court.
          4.       Fourth Reason: the Possibility that a Potential Party May Not
Become an Actual Party

          Fourth, a physician or health-care provider may not know the details of the
allegations against him—or even be assured that he or it will be sued—until the filing
of a petition asserting a health-care-liability claim. Chapter 74 requires that the
claimant give presuit notice of his health-care-liability claim before the filing of a
court claim, but the purpose of the notice provision is simply “to encourage pre-suit
negotiations so as to avoid excessive cost of litigation.” Schepps v. Presbyterian
Hosp. of Dallas, 652 S.W.2d 934, 938 (Tex. 1983); accord Phillips v. Sharpstown
Gen. Hosp., 664 S.W.2d 162, 168 (Tex. App.—Houston [1st Dist.] 1983, no writ)
(indicating that purpose of predecessor to section 74.051(a) is “to facilitate discussion
of the merits of a potential health care claim and thereby initiate amicable settlement
negotiations”). If a court claim is later filed, the petition’s allegations could,
theoretically, differ somewhat from whatever the presuit notice stated. Furthermore,
chapter 74 does not require that every person or entity who is given presuit notice
actually be sued. See Thompson v. Community Health Inv. Corp., 923 S.W.2d 569,
572 (Tex. 1996) (providing that predecessor to section 74.051(a) does not require
“that all those receiving presuit notice be joined in any subsequent suit”). If, as the
Poland parties contend, former section 74.351(a)’s service requirement can be
fulfilled by providing the expert report to a physician or health-care provider before
a health-care-liability claim is filed against him or it in court, then the physician or
health-care provider will be put in the position of having to object to the report—and
likely of having to hire counsel to do so—before having a petition’s allegations
against which to compare the expert’s report or even knowing if they will be sued at
all. The Legislature surely did not intend this result.
          5.       Fifth Reason: Former Section 74.351(a)’s Purposes
          Fifth and finally, “the purposes behind former section 74.351(a)’s adoption
were, among other things, to remove unwarranted delay and expense, to accelerate
the disposition of non-meritorious cases, and to give hard-and-fast deadlines for the
serving of expert reports.” Intracare Hosp. N., 222 S.W.3d at 797 (emphasis added). 
Section 74.351(a)’s expert-report deadline is hard-and-fast only if it is triggered by
the filing of a health-care-liability claim against the particular physician or health-care provider in court. Allowing the provision of an expert report that occurs before
a court claim is filed to suffice for section 74.351(a) service potentially allows for
ambiguity and confusion, rather than promoting certainty. 
 
          For example, there is no guarantee that whatever report may be provided during
presuit negotiations will be the report on which the claimant relies to satisfy section
74.351(a). If the Poland parties’ interpretation of former section 74.351(a) were
correct, then a physician or health-care provider who receives an expert report from
the claimant before a claim is filed against him or it will have to guess whether the
document is intended to satisfy chapter 74 or instead intended simply to be a
negotiation tool.


 And this raises a related question (although not in this case): what
if a document from a medical expert that is provided during the presuit negotiation
period is patently insufficient, not containing all of the basic criteria that would make
it a valid section 74.351(a) report? If the Poland parties’ interpretation is correct,
then must a physician or health-care provider assume that the document is an
attempted (albeit deficient) section 74.351(a) report and object to its deficiencies, for
fear of waiving any objections, or should the potential defendant instead assume that
the document is not intended to be a report, with a true report to follow if that
potential defendant is eventually sued? 
          The potential ambiguity that could arise from these predicaments is obvious
and does not comport with the purposes of former section 74.351(a). Because the
Poland parties’ interpretation would contravene the Legislature’s intent in adopting
former section 74.351(a), we do not deem the Legislature to have intended it. See
Gutierrez, 237 S.W.3d at 873 (“Even if a statute is unambiguous, courts may consider
the statute’s objective; circumstances of its enactment; its legislative history; . . .
[and] consequences of a particular construction . . . .”).
C.      How the Poland Parties Respond
          The Poland parties nonetheless contend that (1) McLeod was Dr. Ott’s
“designated representative and duly authorized agent” to receive the report; (2)
McLeod “requested that the report be served upon the insurance carrier”


; (3) thus,
“the serving of the report on [McLeod] is equivalent to serving the report upon Dr.
Ott or his counsel”; and (4) they therefore “served Dr. Ott [with the report] in the
manner that he requested.” (Emphasis added.)
          To the extent that the Poland parties mean that Dr. Ott (through his alleged
agent) agreed that presuit provision of the expert report would substitute for section
74.351(a) service (or like estoppel argument), we first note that the statement by Dr.
Ott’s counsel upon which the Poland parties rely does not say what Dr. Ott or
McLeod agreed or did not agree to. Additionally, McLeod’s July 13 letter to the
Poland parties’ counsel requested only that the Poland parties’ counsel “provide
[him] with [the] medical expert’s specific criticisms of our member’s care,” without
indicating how or when those criticisms should be sent—or even that those criticisms
be sent in the form of a section 74.351(a) report and CV. (Emphasis added.) 
McLeod’s July 13 letter is thus no evidence that McLeod (even if he could act as Dr.
Ott’s representative for service of an expert report) agreed that presuit provision of
the expert report would substitute for post-suit service of it—assuming without
deciding that a potential party can validly agree to this. 
Conclusion
          We hold that the trial court did not err in granting Dr. Ott’s motion to dismiss
under section 74.351(b) and in dismissing with prejudice all claims against him.



 

          We affirm the judgment of the trial court.



 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Alcala.

Appellants moved for rehearing to the panel and for en banc reconsideration to the
Court. See Tex. R. App. P. 49.1, 49.7.

The panel denied the motion for rehearing addressed to it, leaving pending the motion
for en banc reconsideration, which maintained the Court’s plenary power over the
case. See Tex. R. App. P. 19.1, 49.3.

During the pendency of the motion for en banc reconsideration, the Court sua sponte
withdrew its opinion and judgment issued January 31, 2008, thus rendering moot the
motion for en banc reconsideration. Cf. Brookshire Bros., Inc. v. Smith, 176 S.W.3d
30, 41 n.4 (Tex. App.—Houston [1 Dist.] 2004, pet. denied) (op. on reh’g).

After the Court’s withdrawal of its January 31, 2008 opinion and judgment, during
the pendency of the Court’s plenary power over the case, and before another opinion
and judgment had issued in the case, en banc consideration was requested from within
the Court. See Tex. R. App. P. 41.2(c).

Chief Justice Radack and Justices Taft, Nuchia, Jennings, Keyes, Alcala, Hanks,
Higley, and Bland, participated in the vote to determine en banc consideration.

A majority of the Justices of the Court voted to deny en banc consideration. See id.
Justice Taft, concurring in the denial of en banc consideration. See Tex. R. App. P.
47.5.

Justice Jennings, joined by Justice Bland, dissenting from the denial of en banc
consideration. See id.